Bridgeville Borough *v.* Valsi, Appellant.

Argued November 15, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before GUFFEY, J., without a jury.

*John Regis Vlha,* with him *Emil R. Pecori,* for appellant.

*Karl E. Weise,* with him *Hirsch, Truxall & Weise,* for appellee.

OPINION BY FLOOD, J., March 21, 1962:

Defendant appeals from an order dismissing his exceptions to a decision of the court below, sitting without a jury, which awarded the plaintiff damages in the sum of $1,383.12, with interest from August 15, 1957, in an action on a certain contract between the parties.

The contract, dated May 17, 1952, recites that the plaintiff had constructed an eight inch sanitary sewer through a tract of land then owned by the defendant, that an assessment in the sum of $1,383.12 had been filed in the court below as a lien against the tract at No. 1800 July Term, 1951 D, and that the sewer had been constructed in such a location that the defendant "says that he is unable to connect to said sewer or use the same in connection with the development of his land".

Paragraph 1 of the agreement provides for the execution and delivery by the defendant to the plaintiff of "a Right-of-Way for the construction and maintenance of the sanitary sewer herein described".

Paragraph 2 reads as follows: "The [plaintiff] agrees to satisfy of record the municipal lien at No. 1800 July Term, 1951 D, in consideration whereof the [defendant], for himself, his heirs, successors and assigns, covenants and agrees that in the event he connects to said sewer at any time in the future for the use of any part of his land, that he will pay to the said Borough of Bridgeville the amount of the assessment against said land in the amount of $1383.12, without interest, said payment to be made prior to connecting to said sewer or any use thereof by the said [defendant]."

The agreement is under seal and contains a recital that the parties intend to be mutually bound thereby.

The defendant contends that (1) he is not liable under the agreement for any connection made by his heirs, successors, or assigns, as contrasted with any connection made by him, personally, and (2) in any event no liability arises under the contract unless a connection is made directly into that portion of the sewer which was constructed through the tract which he owned when the agreement was made.

The plaintiff contends that the defendant is liable under the agreement in the event any connection is made, either by himself or by his grantees, and that the connection need not be made directly into that portion of the sewer which was constructed through and assessed against the Valsi tract so long as the sewer line into which the connection is made drains through that portion of the sewer.

The court below stated that the defendant was liable in the event "his land became actually serviced by a sewer installed by the municipality" and that "payment of the amount of the lien was to be certain if at any time actual benefit to the land was realized".

The court found that the defendant was liable upon the following evidence: In August of 1957, the de-

fendant conveyed to the Hartys a fifteen foot piece of property adjoining a lot which his father had conveyed to the Filippis, Hartys' predecessors in title, in 1948, prior to the installation of the sewer through his property in 1950. On August 15, 1957, an application was made for a building permit authorizing the defendant, as general contractor, to construct a dwelling for the Hartys on the Harty or Filippi lot. This permit was granted and a trench and sewer permit was issued at the same time in connection with the same property.

The difficulty with this holding is that it attributes no significance to uncontradicted evidence that (1) the Filippi lot was assessed separately from the Valsi tract, (2) this separate assessment was paid in March 1951, prior to the conveyance of the Valsi tract to the defendant by his father in December 1951, and prior to the date of the parties' contract, (3) the dwelling was constructed on the original Filippi lot, and (4) the Filippi or Harty lot was connected only indirectly to that portion of the sewer which passed through the Valsi tract in that it was connected directly into a sewer on New York Avenue which, in turn, passed first through a right of way and only then through the sewer line constructed on the Valsi tract.

The language of the agreement appears to us to be plain and unambiguous and its meaning may be ascertained from the written instrument itself. It is clear from the recitals that the words "his land" and "said sewer" in paragraph 2 refer, respectively, to the tract of land owned by the defendant on the date of the agreement and to that portion of the sewer system which had been constructed through and assessed against that tract.

We agree with the court below that the connection need not be made by the defendant personally in order to make him liable under the agreement. Any other construction would be absurd because it would enable

the defendant to obtain the benefit of the sewer without cost to himself merely by transferring the property to a third person at a price which presumably would reflect this benefit. In municipal contracts, a construction of an agreement which is contrary to the public interest is to be avoided. Cf. Restatement, Contracts, §236(f).

We cannot find, however, that the record supports the conclusion of the court below that "a part of 'his [the defendant's] land' within the meaning of the agreement was connected to the sewer" merely because "[u]se of the sewer was made by a portion of the land transferred by defendant to another party while defendant retained possession of the remainder".

In support of its decision the court below suggests that an interpretation different from the one adopted by it would (1) unjustly enrich the defendant, (2) render the agreement contrary to public policy, and (3) perpetrate "something akin to a fraud" against the municipality. This suggestion appears to be based upon assumptions (1) that the assessment for the eastern sewer line was valid, binding and collectible, and (2) that the property in question received a net benefit, or received an excess of benefits over damages sustained, in an amount equal to or greater than the amount of the assessment.

Section 2101 of The Borough Code (Act of May 4, 1927, P. L. 519, as amended, 53 PS §45001 et seq.) authorizes boroughs to "lay out, ordain and construct sewers in streets or on private property . . . and pay the costs and expenses thereof out of borough funds, or . . . assess the costs and expenses of sewers in streets as herein provided". 53 PS §47101. That boroughs may assess the costs and expenses of sewers only in the case of sewers constructed in streets of the borough, is apparent from sections 2102 and 2105 of the code, as amended, which cover situations in which "a borough

constructs sewers in streets of the borough and desires to assess the costs and expenses . . ." These sections provide, respectively, for assessment "according to benefits" (53 PS §47102) or "by the foot-front rule" 53 PS §47105. The record in the case before us indicates that the present plaintiff adopted the front foot rule of assessment. Presumably its solicitor was aware of the decision in *Borough of Camp Hill v. Myers*, 52 Pa. D. & C. 684 (1945), decided prior to the date of the improvement, which held that under the above quoted language of The Borough Code, a front foot assessment for a sewer constructed on private property was invalid on the ground that a borough cannot recover from a property owner benefits arising from the construction of a sewer unless the land through which the sewer was laid is a public street or highway. Since the easterly sewer line, which was the subject matter of this agreement, was not constructed in a borough street, but rather, passed directly through the defendant's tract, the propriety of the original assessment was doubtful. Consequently, the agreement rendering the defendant liable to pay it under certain circumstances would seem to have been an advantageous one, so far as the borough is concerned.

From the record it appears that the easterly sewer line passed through a corner of the defendant's tract for a distance of approximately 350 feet and that the defendant gave the borough a right of way, apparently ten feet wide, for this portion of the sewer in exchange for the borough's promise to satisfy of record the lien assessed against the defendant's land. While Section 1401 of The Borough Code gave the plaintiff the right to enter upon, appropriate, injure or destroy the defendant's property in constructing the sewer (53 PS §46401), the defendant had the right, among other things, to have viewers appointed (53 PS §46420) to determine the damages (53 PS §46423) or the excess

of damages over benefits (53 PS §46425). In a somewhat similar case involving The First Class Township Code (Act of June 24, 1931, P. L. 1206, as amended, 53 PS §55101 et seq.), the appellants contended that a township had no power to enter into a contract releasing a property owner from liability for an assessment in consideration of the granting of a right of way and a release of damages. *Nether Providence Township Sewer District Assessment Case*, 148 Pa. Superior Ct. 7, 24 A. 2d 678 (1942). In upholding the contract we said (148 Pa. Superior Ct. at page 11, 24 A. 2d at page 680) : "One can readily conceive that a sewer may pass through a property owner's lawn and extensive excavations be made, which cause damages to the owner's property equal to, or in excess of, the cost of construction assessable against that property. In such event it doubtless would often be sensible for the township to enter into a contract with the owners". Here, as in that case, there is no evidence showing that the contract was illegal, improvident, fraudulent or that it resulted in unfair and unequal assessments against other properties. That the construction of a sewer through a tract of land may well result in damages far in excess of any special benefits which accrue to the land is aptly illustrated in *Simon v. Philadelphia*, 406 Pa. 281, 177 A. 2d 621 (1962).

We conclude that under the language of the contract the defendant is liable only if and when a portion of "his land" is connected directly into that portion of the sewer which passed through and was assessed against the Valsi tract.

Unfortunately, we cannot determine from the record whether or not any such direct connection has been made.

Plaintiff's borough engineer testified that the assessment in question was made for the sewer which extended across the easterly part of the Valsi property,

but that no assessment was made for the sewer located at or near the western boundary of the Valsi tract because "part of that sewer . . . would not touch the Valsi property. The rest of it was right along the Valsi line and there was a question of whether it actually fronted on the property or not . . ." He also testified that while all of the Valsi property "could be sewered" into the eastern line, all of the lots laid out by the present owners of the Valsi tract which had connections were connected into the sewer on the western side of the property, except the Filippi or Harty lot which was "sewered" indirectly into the easterly sewer.

On the other hand, plaintiff's borough secretary testified that application had been made for a sewer permit for "Lot 10 in the Hallo Plan", part of the land owned by the defendant on the date of the agreement, and that that lot "abuts on the sanitary sewer, the easterly side, which is the sewer in controversy in this case". In addition, plaintiff's street commissioner, when asked whether the connection for lot 10 would be made into "that same sewer on the easterly side", answered: "That's right. It would have to be made on the easterly side."

This evidence does not clearly indicate whether the connection or proposed connection for lot 10 is a direct connection into the sewer line constructed through and assessed against the Valsi tract, or an indirect connection, such as exists on the Filippi or Harty lot. While it seems reasonably clear that lot 10 or some other lot on the Hallo plan ultimately will be connected directly into the sewer line described in the agreement, the defendant is not liable unless and until such a connection is made, and interest cannot be awarded prior to the date of an application for a permit to make such a direct connection.

Under the circumstances and in view of the unsatisfactory character of the evidence the order and decision

of the court below must be reversed and a new trial granted. *Romesberg v. Caplan Iron and Steel Company,* 385 Pa. 36, 122 A. 2d 53 (1956).

Order and decision reversed and a new trial granted.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I respectfully dissent and would affirm the judgment.

This case involves the interpretation of a written contract. In consideration of the release of his property from a sewer lien, appellant agreed to pay a sum equal to the amount of same "in the event he connects to said sewer at any time in the future for the use of any part of his land." Such a connection was in fact made for the benefit of his land. Although the connection was indirectly made through an intervening sewer, nevertheless, the sewer for which the lien was filed had to be used to carry away the sewage emanating from part of appellant's land. I think this satisfied the requirement of the contract, rendering appellant liable for the payment.

WRIGHT, J., joins in this dissenting opinion.