Highland Sewer and Water Authority,
Appellant, *v.* Engelbach.

Argued April 13, 1966. Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Edward J. Harkins,* with him *Gerald K. Gibson,* for appellant.

*Gilbert E. Caroff,* for appellees.

OPINION BY ERVIN, P. J., June 17, 1966:

The only question presented by this appeal is whether a municipal authority may assess the cost of constructing a sanitary sewer according to the foot front rule where the sewer is placed in an unopened street and where the lot is benefited by the sewer. The court below held that it could not, because the street was not a public street and therefore "the assessment is illegal and void." We cannot agree with this conclusion.

On March 30, 1963, appellant filed a municipal lien against the property of appellees situate in Geistown Borough, Cambria County. That property fronts 50 feet on Liberty, now Library Street, and extends back between parallel lines a distance of 160 feet to Retsuc Court, it being Lot No. 87 on the Plan of Lots called Sunny Meade, which was acknowledged on the 4th day of August, 1925, approved by the Planning Commission of the City of Johnstown on the 29th day of July, 1925, and recorded in the office of the Recorder of Deeds of Cambria County on the 15th day of February, 1927. In the deed of appellees the lot is described as fronting 50 feet on "Liberty Street, now Library Street." The name of that street was changed to Sunberry Street. It was described as bordering 160 feet on Leo Street. That street has been changed to Lion Street.

The lot is bounded on the front by Sunberry Street, a public street in the Borough of Geistown, Cambria County, and it is bounded on the easterly side by Lion Street, which is shown on the recorded Plan of Lots but that street had not been accepted by ordinance of the Borough of Geistown.

Appellant installed a sanitary sewer in Sunberry Street to render service to the properties on that street. That sewer extends along the full frontage of 50 feet of the property of appellees fronting on Sunberry Street. The sewage in that sewer flows from east to west. Appellant installed a sanitary sewer in Lion Street to render service to the properties on that street. That sewer was placed within the easterly half of Lion Street and extends approximately 90 feet along the rear portion of the property of appellees bordering on Lion Street. The sewage in that sewer flows from north to south. The work was completed on September 30, 1962 and the sewers on both streets were part of the same project.

Appellant had adopted assessment rules relating, inter alia, to any property abutting on more than one street. The rules provided that in case of corner lots, where the sewer services two sides of the property, which is large enough to be subdivided, the full length of the front, plus the excess over 120 feet of the second side, should be assessed.

In accordance with the assessment rules of the appellant the assessment was for 90 feet in Sunberry Street and Lion Street at $7.00 per foot front for the sum of $630.00. That assessment was for 50 feet frontage on Sunberry Street and 40 feet frontage on Lion Street, it being the excess of 120 feet of the frontage of the property of appellees on Lion Street.

On February 27, 1963, appellees tendered to appellant the sum of $350.00 for the frontage of 50 feet on Sunberry Street but that tender was refused because it did not include the 40 feet of frontage of appellees' property on Lion Street. Thereafter the lien was filed.

The lien contained an averment that prior to the construction of the sewer and sewer system, the appellant submitted the plan of construction and estimated cost to the municipalities (including Geistown Bor-

ough) in which the project was to be undertaken, and the municipalities approved such plan and estimated cost by ordinance.

The case was tried before Judge ALTON A. MC-DONALD without a jury. The trial judge concluded that as a matter of law the evidence was insufficient to prove that Lion Street is a public street and therefore held that the appellant had no authority to assess a lien for construction of a sanitary sewer in Lion Street and reduced the lien from $630.00 to $350.00. The action of the trial judge was sustained by the court in banc. The authority then filed this appeal.

Prior to August 6, 1963 there can be no doubt that a borough could not sustain a lien for the construction of a sanitary sewer computed by the foot front rule unless the sewer was constructed in a public highway and abutted the property to be assessed: *Bridgeville Borough v. Valsi,* 197 Pa. Superior Ct. 410, 415, 416, 178 A. 2d 826. The sewer in the present case, however, was constructed by a municipal authority and not by a borough. The Municipality Authorities Act of 1945, as amended, §4B, 53 PS §306B, grants to every authority, inter alia, the following rights and powers: "(s) To charge the cost of construction of any sewer or water main constructed by the Authority against the properties benefited, improved or accommodated thereby according to the foot front rule. Such charges shall be based upon the foot frontage of the properties so benefited, and shall be a lien against such properties. Such charges may be assessed and collected and such liens may be enforced in the manner provided by law for the assessment and collection of charges and the enforcement of liens of the municipality in which such Authority is located: Provided, That no such charge shall be assessed unless prior to construction of such sewer or water main the Authority shall have submitted the plan of construction and estimated cost

to the municipality in which such project is to be undertaken, and the municipality shall have approved such plan and estimated cost: And provided further, That there shall not be charged against the properties benefited, improved or accommodated thereby an aggregate amount in excess of the estimated cost as approved by the municipality."

Section (r) of the above act authorizes the authority to charge the cost of construction of any sewer against the properties benefited, improved or accommodated thereby to the extent of such benefits. It is clear that the legislature authorized an authority to assess the cost of construction of a sewer by the two well-known methods of benefits and foot front without regard to abutment. Two things are required by the act, (1) the property must be benefited, (2) the plan of construction and estimated cost must be approved by the municipality in which the sewer is to be constructed. Both conditions were met in the present case.

Our Supreme Court, in the case of *Simon Appeal*, 408 Pa. 464, 184 A. 2d 695, pointed out the difference between a municipal authority and a township. A municipal authority is not the creature, agent or representative of the municipality organizing it but is an independent agency of the Commonwealth. In that case Mr. Justice O'BRIEN, for a unanimous court, at page 472, stated: "In the light of the foregoing, we conclude that the question of abutment is not germane to this litigation, the improvement having been constructed by an Authority whose assessment powers do not require that the properties assessed abut the improvement."

Following the *Simon* decision, the legislature amended The Borough Code by Act No. 281, 53 PS 47105, which became effective August 6, 1963, using language similar to that used in the Municipality Authorities Act in taking out the requirement that the sewer had to be

constructed in streets of the borough and that the assessed property had to abut thereon.

It is clear from the evidence in this case that the rear part of the assessed lot was benefited by the construction of this sewer. A house could be constructed thereon without violating the zoning ordinance.

We cannot agree with the conclusion of the court below that the authority did an illegal act by constructing the sewer in Lion Street. We have pointed out that there is nothing in the Municipality Authorities Act which prohibits such construction, as there was in the former provisions of the Borough and Township Codes. When the owner of the tract originally prepared a plan with unopened streets and lots abutting thereon and then recorded it and sold lots therefrom, referring to the plan in the deeds, this implies a grant or covenant to the purchasers of the lots that the street shall be forever open to the public and operates as a dedication of it to public use. Any owner of a lot in the plan may assert the public character of any street and the right of the public to use it. The rights of the lot owners are private contract rights and are not affected by the failure of the municipality to act upon the dedication: *O'Donnell v. Pittsburgh*, 234 Pa. 401, 410, 83 A. 314. See also *Boyer v. Baker*, 196 Pa. Superior Ct. 405, 175 A. 2d 143.

If there is no acceptance of the unopened streets within 21 years after the dedication, there may be no acceptance thereafter without the consent of the owners of the land on which the same have been laid out: Act of May 9, 1889, P. L. 173, superseded as to boroughs by the Act of 1927, P. L. 519, art. XVI, §1631, as amended, 53 PS §46631. But again we point out that the authority that constructed this sewer is not the borough. It is our opinion that the authority had the right to use the unopened street for the construction of a sanitary sewer therein. Certainly the owners of the lots in the

plan could use the streets for their own purposes or could have service people use them to bring milk, bread, coal, etc. to their homes for their use and benefit. The authority was merely using the unopened street for the same purpose, to wit, to bring sewer service to the lot owners. If the borough ever takes over the street and opens it as a public street, then the lot owner might have some claim against the borough for damages.

Order reversed and the court below is directed to enter judgment in favor of the appellant and against the appellees for the full amount due on the municipal lien filed in this case.

WRIGHT, J., would affirm the judgment below.