

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-9-1997

# Independent Entr Inc v. Pittsburgh Water

Precedential or Non-Precedential:

Docket 96-3009

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Independent Entr Inc v. Pittsburgh Water" (1997). *1997 Decisions.* Paper 9.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/9

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

------

N0. 96-3009

------

INDEPENDENT ENTERPRISES INC.; THOMAS LOZECKI
Appellants

v.

PITTSBURGH WATER AND SEWER AUTHORITY;
CITY OF PITTSBURGH

------

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 95-cv-01358)

------

Argued July 25, 1996

BEFORE:  BECKER, STAPLETON and MICHEL,* <u>Circuit Judges</u>

(Opinion Filed January 9, 1997)

------

Alan S. Miller (Argued)
Picadio, McCall, Kane & Norton
Suite 3180 USX Tower
600 Grant Street
Pittsburgh, PA 15219
Attorneys for Appellants

Kimberly A. Brown (Argued)
Stacey L. Jarrell
Thorp, Reed & Armstrong
One Riverfront Center
Pittsburgh, PA 15222
 and
Craig E. Frischman
Kapetan, Meyers, Rosen, Louik &
Raizman
Suite 200, The Frick Building
Pittsburgh, PA 15219-6003
Attorneys for Appellee
Pittsburgh Water and Sewer Authority

* Hon. Paul R. Michel, United States Circuit Judge for the
   Federal Circuit, sitting by designation.

                              Virginia S. Scott (Argued)
                              City of Pittsburgh
                              Department of Law
                              313 City County Building
                              Pittsburgh, PA 15219
                              Attorney for Appellee
                              City of Pittsburgh

------------------------

OPINION OF THE COURT

------------------------


STAPLETON, Circuit Judge:


        We here review the district court's dismissal under

Fed. R. Civ. P. 12(b)(6) of a multiple-count complaint brought

against the City of Pittsburgh (the "City") and the Pittsburgh

Water & Sewer Authority (the "Authority") by Independent

Enterprises Inc. ("Independent"), a construction company, and

Thomas Lozecki, a City taxpayer and Authority ratepayer.[1]  The

claims asserted in the complaint include a civil contempt of

court claim, an equal protection claim and procedural and

substantive due process claims brought under 42 U.S.C. § 1983,

and pendent state law claims.  All of these claims arose in the

context of the Authority's failure to award Independent three

Authority contracts on which Independent had submitted the lowest

bids.

------------------------

1.  Lozecki is a party only to the pendent state law claims.

## I.  The Facts

Because the district court dismissed Independent's claims pursuant to a motion to dismiss under Fed R. Civ. P. 12(b)(6), we accept as true all factual allegations in Independent's complaint and all reasonable inferences therefrom.[2] Nami v. Fauver, 82 F.3d 62, 65 (3d Cir. 1996); Spence v. Straw, 54 F.3d 196, 197 (3d Cir. 1995).

In 1986, Independent sued the City and Authority in the United States District Court for the Western District of Pennsylvania after the City declared that Independent was "noncompetent" to bid on any projects in which it had an interest and the Authority consequently rejected a low bid by Independent. In settlement of that suit, the parties agreed to a consent decree that was ultimately entered by the court. The consent decree provided that Independent could not be "debarred" from bidding on City contracts based on any past performance, and that if the City or Authority wanted to "disqualify" Independent from

---

2.  The Appellees filed a "Motion to Dismiss or For Judgment on the Pleadings." Independent argues on appeal that the district court converted the Appellees' motion to one for summary judgment by considering matters outside of the pleadings, and that such conversion was improper because Independent was not given notice of the conversion or an opportunity to submit relevant materials. See Fed. R. Civ. P. 12(b). Independent thus asserts that "it was reversible error for the district court to grant the motion without having afforded Independent any opportunity to submit materials under Rule 56." Appellant's Brief at 34. Because Independent indeed was not given an opportunity to submit evidence to defeat a motion for summary judgment, we will treat the district court's decision as a 12(b)(6) dismissal and will disregard anything other than the allegations of the complaint when conducting our plenary review of that decision.

City or Authority work because of problems with future performances, it would first have to conduct a hearing under the Pennsylvania Local Agency Law. Between the issuance of the consent decree and the solicitation of bids for the 1995 contracts at issue here, Independent satisfactorily performed "numerous" contracts for both the City and Authority.

In May 1995, the Authority solicited bids for two projects, the "Annual Water Line Contract" and the "Grandview Avenue Project." Independent submitted bids for both projects. In accordance with the Authority's "MBE/WBE Utilization Requirements," each of Independent's bids included a list of minority- and women-owned business enterprises ("MBE/WBEs") that Independent intended to use as subcontractors if awarded the contract. One of the MBEs Independent listed was Whaley & Sons, a firm that Independent claims was certified by the Authority as an approved MBE/WBE vendor. Independent's bids were the lowest for both projects, and an independent consultant recommended that the Authority award both contracts to Independent.

Before the Authority made a decision about awarding the contracts, the City's Deputy Mayor of Government Operations, Salvatore Sirabella, issued a memorandum (the "Sirabella memorandum") to the Authority's Executive Director. In the memorandum Sirabella expressed concern about the cost over-run on a recent Authority project that had been completed by Independent, and directed the Authority to "temporarily halt awarding any contracts to Independent ...." App. at 87. Shortly after receiving the Sirabella memorandum, the governing body of

4

the Authority (the "Board") decided that Whaley & Sons was an unacceptable MBE subcontractor and resolved to reject Independent's bids for both the Water Line Contract and the Grandview Avenue Project "for failure to meet the MBE/WBE requirements of the specifications." Auth. Res. 67 & 68, App. at 197-98. The Board then awarded the two contracts to the next lowest bidders. About a month later, the contracts with those bidders were rescinded, all bids were rejected, and the Authority resolved to readvertise both the Water Line and Grandview Avenue projects.

In June, 1995, Independent submitted a bid to the Authority for the "Annual Sewer Improvement Contract." Again, Independent's was the lowest responsible bid. And again, despite its low bid, Independent was not awarded the contract. There was apparently some communication between the attorney for the Authority and Independent regarding the absence of a Power of Attorney form in Independent's bid package, but ultimately the Authority did not reject Independent's bid on that basis. Instead, the Authority's Board simply rejected all of the Sewer Improvement Contract bids without explanation and readvertised the project.

In response to the Authority's failure to award it the Water Line Contract, the Grandview Avenue Project, and the Sewer Improvement Contract, Independent filed this suit. Its complaint alleged that: (1) the Authority and City violated the terms of the consent decree by "disqualifying" Independent from Authority and City contracts; (2) the Authority's MBE/WBE

5

Utilization Requirements discriminate against Independent and other construction companies on the basis of race, ethnicity, national origin, and/or sex, thereby denying them the equal protection of the laws; and (3) the Authority's and the City's disqualification of Independent, and the Authority's resulting refusal to award it the Water Line Contract, the Grandview Avenue Project, and the Sewer Improvement Contract, deprived Independent of property without procedural and substantive due process.

The district court dismissed all of Independent's federal claims. First, the court dismissed the § 1983 claims against the Authority on the ground that the Authority is not a "person" within the meaning of § 1983. The district court then dismissed the civil contempt claim on the ground that Independent had not been "debarred" from bidding on City or Authority contracts.

Turning to Independent's procedural due process claim, the district court held that "Pennsylvania provides a judicial procedure for unsuccessful bidders to challenge whether a local contracting authority has violated a bidder's rights under the Municipal Authority Act." Op. at 7. In the court's view, an adequate post-deprivation procedure thus existed to satisfy the demands of the Due Process Clause. The court dismissed Independent's substantive due process claims because it found that Independent had not alleged facts showing that the City had deprived it of a protected property interest.

With respect to the equal protection claim, the court held that Independent lacked standing because the complaint

6

failed to allege a causal connection between the MBE/WBE requirements and the injury Independent had suffered from the rejection of its bids.[3]

We will affirm the dismissal of Independent's due process claims. We will reverse the judgment of the district court, however, and remand for further proceedings on Independent's civil contempt and equal protection claims.

## II.  The Civil Contempt Claim

In Count I of its complaint, Independent alleges that the Authority and City are in civil contempt of court because their disqualification of Independent pursuant to the Sirabella memorandum and the Authority's resulting rejection of Independent's three low bids violated the terms of the 1986 consent decree. The district court dismissed the contempt claim because it found that the facts alleged did not show a violation of the terms of the consent decree. We disagree.

The 1986 consent decree provided in part:

2.  Independent shall not be debarred from bidding on any City of Pittsburgh Contract based on past conduct or performance.

3.  Independent, City and Authority shall act in a cooperative manner on all contracts. Independent shall:

    (a) cooperate with inspectors at job site; and

_____

3.  The district court, having dismissed the federal claims, declined to exercise supplemental jurisdiction over Independent's state claims and dismissed them without prejudice. It may reconsider that decision on remand in light of our disposition of the federal claims.

7

(b) cooperate with consultants and officials of the City and Authority in regard to problems that occur at the job site and administrative matters; and

(c) move quickly to resolve any disputes with adjoining property owners as a result of their work.

4. If, because of problems with future performances, the City or Authority desire to disqualify Independent from City or Authority work, a hearing shall be held prior to disqualification under the Pennsylvania Local Agency Law, and Independent shall have all rights afforded thereunder.

App. at 138-39.

At the time the consent decree was entered, the Pittsburgh Code contained a provision entitled "Debarment from Bidding On and Participating in City Contracts." § 161.22. This provision states that any person or enterprise that had committed an "offense," as defined therein, will not be allowed to bid and will not be "a responsible bidder on any city contract." "Offense" is defined in a non-exclusive list to include sixteen different categories of conduct ranging from fraud in connection with the obtaining or performance of a contract to the following:

(10) Willful or material failure to perform the terms of a contract or agreement in accordance with specifications or within contractual time limits;

(11) A record of failure to perform or of unsatisfactory performance in accordance with the terms of one or more contracts, provided that the failure or unsatisfactory performance was within a reasonable period of time preceding the determination to debar and was caused by acts within the control of the person or enterprise debarred;

* * *

8

(16)  Other cause affecting responsibility as
a city contractor or vendor as may be
determined by the city.

Pittsburgh Code § 161.22(b).  Debarments under this provision are
to last for "a reasonable, definitely stated period . . .
commensurate with the seriousness of the cause therefore," but
"as a general rule [are not to] exceed three years."  Id.
§ 161.22(d)(3).  Debarment proceedings are initiated at the
discretion of the Mayor and the City's Director of the Department
of General Services.  The stipulated process includes a notice to
the contractor and a right to a hearing before the Director at
which the cause for the debarment has to be established by a
preponderance of the evidence.

The Pennsylvania Local Agency Law referenced in
paragraph 4 of the consent decree is found in Title 2 of the
Pennsylvania Consolidated Statutes Annotated at §§ 551–555 and
751–754.[4]  These subchapters relate solely to process; they
stipulate the procedural rights that interested parties will have
in any "adjudication" by a local agency, e.g., the rights to a
hearing, representation by counsel, cross–examination, a written
decision, judicial review, etc.  Nothing in these subchapters

---

4.  Title 2 is devoted to "Administrative Law and Procedure."
Subchapter 5A provides procedure for "Commonwealth agencies" and
subchapter 5B stipulates procedure for "local agencies", which
include any "government agency other than a Commonwealth agency."
 2 Pa. C.S.A. § 101.  Section 105 of Title 2 provides:

The provisions of Subchapter B of Chapter 5
(relating to practice and procedure of local
agencies) and Subchapter B of Chapter 7
(relating to judicial review of local agency
action) shall be known and may be cited as
the "Local Agency Law."

describes the circumstances under which a would-be contractor may be foreclosed from contracting with a local agency.

In the context of these statutory provisions and the litigation that produced the consent decree, the intent of paragraph 4 seems clear and unambiguous. Independent was concerned about being foreclosed from doing City and Authority work based on complaints about its conduct and contract performance. In the interest of settling the pending lawsuit, the City was willing to assure that there would be no foreclosure based on past conduct or performance. While it and the Authority were not willing to give the same assurance with respect to future contract performance, they were willing to commit to hearing Independent's side of the story regarding any alleged deficiency in its performance before foreclosing it from City and Authority work. Independent would be able to give its side in a hearing to be held in accordance with the Pennsylvania Local Agency Law. This reading of paragraph 4 gives the word "disqualified" its commonly understood meaning. "Disqualify," according to Webster, means "to deprive of a power, right or privilege" or make "ineligible . . . for further competition because of violations of the rules," Webster's Ninth New Collegiate Dictionary 366 (1990); Black defines "disqualify" as "to render ineligible." Black's Law Dictionary 472 (6th ed. 1990).

Given this intent, we further think it clear that if Independent can prove its allegations, it will have established a violation of paragraph 4 of the consent decree. If the Sirabella

directive, as alleged, resulted in Independent's not being considered for City or Authority work for a period of time because of a cost overrun on a contract entered after the consent decree, the failure to give Independent a hearing on the overruns was a violation of paragraph 4.

In reaching its contrary conclusion, the district court reasoned that (1) "debarred" in paragraph 2 was intended to include only disqualifications for City work pursuant to the "formal procedure" spelled out in § 161.22 of the City Code; (2) "disqualify" in paragraph 4 is synonymous with the concept of "debar" in paragraph 2; (3) there was no "formal procedure" under § 161.22 conducted in connection with the Sirabella directive; and (4) therefore, there was no disqualification of Independent and no need for a hearing. We believe this approach leaves paragraphs 2 and 4 virtually without effect.

Even assuming that "debarred" in paragraph 2 refers to a foreclosure from City work for a period of time for the reasons set forth in § 161.22, it seems highly unlikely to us that the parties intended to limit its scope to situations in which the City both foreclosed Independent and invoked the formal process of § 161.22. After all, paragraph 2 simply says that the City won't debar Independent, i.e., declare it a non-responsible bidder, for past performance. But even further assuming that paragraph 2 is so limited, "disqualified" could not have been intended to limit the scope of paragraph 4 to situations where the "formal process" of § 161.22 is invoked. That process is

11

City-specific and, by its own terms, cannot be invoked by the Authority.[5]

Giving the word "disqualify" and the phrase "because of problems with future performances" in paragraph 4 their commonly understood meaning, we find paragraph 4 broad enough to include a blanket foreclosure of Independent from City or Authority work because of an overrun on a post-consent decree contract. Moreover, it seems to us that the stated causes for debarment under § 161.22 are broad enough to include such a foreclosure. Accordingly, our conclusion would not be different even if we regarded the term "disqualify" in paragraph 4 as limited by the use of "debarred" in paragraph 2.

III.   The § 1983 Claims

A.   The "Person" Requirement

Independent brought its equal protection and due process claims against the City and Authority under 42 U.S.C.

_____

5.  In its opinion, the district court commented that, even assuming there had been a violation of the consent decree, the appropriate remedy would have been to file an application in the earlier suit.  In response to the district court's suggestion, Independent stresses that the judge who presided over the former civil action had retired before the present action was commenced. Therefore, Independent argues, nothing should preclude it from including the contempt of court claim with its other claims against Appellees, and indeed that "[t]he assertion of all claims in one action serves the interests of judicial economy of resources.  Moreover, even if the civil action was required to be brought at the old docket number, the proper action would be to transfer the matter rather than dismissal [sic]."  Appellant's Brief at 21 n.6.  We agree that Independent should not be precluded from pursuing its contempt claim merely because it, for apparently logical reasons, failed to file that claim under the docket number under which the consent decree was entered.

§ 1983, which provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to be deprived of any rights, privileges, or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

In support of its conclusion that the Authority "is not a 'person' within the meaning of section 1983," Op. at 4, the district court cited Will v. Michigan Department of State Police, 491 U.S. 58 (1989). Will held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. at 71. We cannot accept the district court's conclusion that Will compels a finding that the Authority is not a "person" under § 1983. Indeed, the limited record presently available on the issue indicates that the Authority, in all likelihood, is a "person" under § 1983.[6]

---

6. At oral argument, counsel for the Authority informed us that the Authority had not argued before the district court that it was not a "person" under § 1983. Counsel further candidly acknowledged that she could cite no case in which a public entity had been held not to be a "person" on the basis of a record similar to the one before us. Counsel stopped short of conceding, however, that the Authority is a "person" under § 1983. As a result, the district court, on remand, will have to determine whether the Authority is a "person." This will require it to afford the parties the opportunity to develop a record and to then weigh, with the assistance of the parties, the factors identified by this court in Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir.) (in banc), cert. denied, 493 U.S. 850 (1989), and Bolden v. Southeastern Pennsylvania Transportation Authority, 953 F.2d 807 (3d Cir. 1991) (in banc), cert. denied, 504 U.S. 943 (1992).

13

The framework for addressing the question of whether the Authority is a "person" within the meaning of § 1983 was established by Will and the earlier case of Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).  In Monell, the Supreme Court overturned its earlier decision in Monroe v. Pape, 365 U.S. 167 (1961), and held that municipalities and other local government units are "persons" subject to liability under § 1983.  436 U.S. at 690.  However, the Court limited its holding "to local government units not considered part of the State for Eleventh Amendment purposes."  Id. at 690 n.54.

In Will, the Court gave effect to the limitation expressed in Monell.  Relying on the ordinary meaning of the term "person," the legislative history of § 1983, and federalism concerns, the Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  491 U.S. at 71.  The Will Court emphasized the continuing validity of Monell, however, and limited Will's holding "only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes."  Id. at 70.

The limitations that define the boundaries of the holdings in Monell and Will establish that the most important inquiry in determining whether a governmental entity is a "person" within the meaning of § 1983 is whether the entity is an "'arm[] of the State' for Eleventh Amendment purposes."  Id.; see also Monell, 463 U.S. at 690 n.54.  In Fitchik v. New Jersey Transit Rail Operations, Inc., this court summarized the factors

14

to be considered in analyzing an entity's status as an "arm of the State" entitled to Eleventh Amendment immunity:

(1) Whether the money that would pay the judgment would come from the state (this includes three ... factors--whether payment would come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);

(2) The status of the agency under state law (this includes four factors--how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and

(3) What degree of autonomy the agency has.

873 F.2d at 659 (summarizing more detailed list of factors set forth in Urbano v. Board of Managers, 415 F.2d 247 (3d Cir. 1969), cert. denied, 397 U.S. 948 (1970)). See also Bolden, 953 F.2d at 814-16.

We have repeatedly held that the most important factor in determining whether an entity is an "arm of the State" for purposes of the Eleventh Amendment is "whether any judgment would be paid from the state treasury." Fitchik, 873 F.2d at 659; see also Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140, 1145 (3d Cir.), cert. denied, 116 S. Ct. 340 (1995); Bolden, 953 F.2d at 818; Urbano, 415 F.2d at 251. According to Pennsylvania's Municipal Authorities Act of 1945 (the "MAA"), under which the Authority is organized, the Authority "shall have no power ... to pledge the credit or taxing power of the Commonwealth of Pennsylvania ..., nor shall any of its obligations be deemed to be obligations of the Commonwealth ..., nor shall the Commonwealth ... be liable for the payment of principal or

15

interest on such obligations." 53 P.S. § 306(C). The MAA also grants the Authority the power "[t]o fix, alter, charge and collect rates and other charges ... for the purpose of providing for the payment of the expenses of the Authority, ... [and] the payment of the principal and of interest on its obligations ...."
Id. § 306(B)(h). Because the Authority also has the power "[t]o sue and be sued," id. § 306(B)(b), the "obligations" which the Authority will pay from the funds collected through "rates and other charges" presumably include judgments. Under these provisions, it appears that the Authority's funding does not come primarily from the State, and that any judgment against the Authority would not be "paid from the state treasury." This would weigh heavily against the Authority's being considered "an arm of the State" for Eleventh Amendment purposes.

The second factor, the Authority's status under state law, also appears to weigh against a finding that the Authority is an "arm of the State," if less clearly. Like SEPTA, which we held in Bolden is a "person" under § 1983, 953 F.2d at 820, the Authority appears to exhibit some attributes not characteristic of an arm of the State and other attributes that are associated with the State. On the one hand, a municipal authority is "a body politic and corporate," 53 P.S. § 302, with the power to sue and be sued. Id. § 306(B)(b). In addition, municipal agencies are not entitled to sovereign immunity from state tort actions under 42 Pa. C.S.A. § 8521, but instead are "local agencies" entitled only to governmental immunity under 42 Pa. C.S.A.

16

§ 8541. See Miller v. McKeesport Mun. Water Auth., 555 A.2d 790 (Pa. 1989); E-Z Parks, Inc. v. Larson, 498 A.2d 1364, 1369 (Pa. Cmwlth. 1985), aff'd per curiam, 503 A.2d 931 (Pa. 1986).

On the other hand, municipal authorities have the power of eminent domain, 53 P.S. §306(B)(l), and have been held to be "agencies of the Commonwealth" independent from their incorporating municipality and not governed by laws empowering local municipalities. Whitemarsh Township Auth. v. Elwert, 196 A.2d 843, 845-46 (Pa. 1964); Forney v. State Ethics Comm'n, 425 A.2d 66, 68 (Pa. Cmwlth. 1981); Highland Sewer & Water Auth. v. Engelbach, 220 A.2d 390, 392 (Pa. Super. 1966).

Like the first two, the third factor, the Authority's "degree of autonomy" from the state, seems to weigh against a finding that the Authority is an "arm of the State." The provisions of the MAA afford the Authority a high degree of autonomy from the Commonwealth of Pennsylvania. For example, the members of the Board--which exercises all of the Authority's powers--are appointed not by the State but by the governing body of the City of Pittsburgh, the incorporating municipality. 53 P.S. § 309(A)(a). The Authority is granted "all powers necessary or convenient" for carrying out its purposes, including, inter alia, the power to sue and be sued, to purchase property, to make by-laws, to appoint officers and define their duties, and to make contracts. Id. § 306(B).

We have thus far discussed only the most significant inquiry identified by Will and Monell, i.e., whether an entity is an "arm of the State" for Eleventh Amendment purposes. Will also

17

relied on two additional factors in reaching the conclusion that a State is not a "person" within the meaning of § 1983 -- (1) "the language of Section 1983 and the meaning of the word 'person'" and (2) the fact that "states enjoyed sovereign immunity from suit at common law, and ... Section 1983 was not intended to override 'well established immunities or defenses under common law.'" Bolden, 953 F.2d at 816. We note that neither of these factors supports the district court's finding that the Authority is not a "person" under § 1983.

First, although the term "person" in common usage does not include the "sovereign," Will, 491 U.S. at 64, the term does refer to "bodies corporate and politic," meaning "corporations, both private and public (municipal)." Id. at 70. Because the Authority is expressly identified under the MAA as a "body politic and corporate," 53 P.S. § 302, and appears to be the sort of "public corporation" that is included in the "common usage" of the term "person," the linguistic rationale underlying Will's exclusion of States from the "persons" suable under § 1983 does not apply to the Authority.

Second, the Will Court also recognized that "in enacting § 1983, Congress did not intend to override well-established immunities under the common law." 491 U.S. at 67. Therefore, because the sovereign immunity to which States are entitled was a well-recognized principle of the common law at the time § 1983 was enacted, the Court was unwilling to extend § 1983 liability to States. Id. The Authority, however, cannot claim the same common law immunity from suit historically enjoyed by

18

States.  In Owen v. City of Independence, 445 U.S. 622, 646 (1980), the Supreme Court noted that municipalities had lost their entitlement to sovereign immunity by the end of the 19th century.  In addition, Pennsylvania courts have explicitly held that local municipal authorities such as a public parking authority and a local redevelopment authority are not entitled to the sovereign immunity enjoyed by the Commonwealth.  See, e.g., Trustees of Second Presbyterian Congregation v. Public Parking Auth. of Pittsburgh, 119 A.2d 79 (Pa. 1956); Greer v. Metropolitan Hosp., 341 A.2d 520, 528 (Pa.Super. 1975). Therefore, treating the Authority as a "person" under § 1983 would not override any common law immunity to which the Authority is entitled.

It would be premature to express an opinion on the result that the required weighing process should produce.  A record must first be developed and the parties permitted to comment upon it.  We hold only that the Authority may be a person within the meaning of § 1983 and that the district court erred in ruling to the contrary on the present record.

## B.   The Equal Protection Claim

Having concluded that it was error to dismiss the § 1983 claims against the Authority on the ground that it is not a "person," we now turn to Independent's equal protection claim.  It alleges that the Authority's MBE/WBE Utilization Requirements, which were the asserted basis for the Authority's rejection of Independent's bids for the Water Line Contract and

19

Grandview Avenue Project, discriminate against Independent and its owners on the basis of race, sex, or national origin, thereby violating their right to equal protection. The district court dismissed the claim for lack of standing because it found that Independent "fail[ed] to allege facts that establish a causal relationship between the injury--its rejected bids--and the challenged conduct--the minority utilization requirement." Op. at 11. It reached this conclusion by focusing on those portions of the complaint alleging that Independent had submitted bids in compliance with the utilization requirements and that those bids were rejected because of the Sirabella memorandum.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). In order to satisfy the standing requirement, a party must demonstrate (1) an "injury in fact" which is both "concrete and particularized" and "actual or imminent"; (2) a causal relationship between the injury and the challenged conduct such that the injury "fairly can be traced to the challenged action of the defendant"; and (3) a likelihood that the injury will be redressed by a favorable decision. Northeast Fla. Chapter of Assoc'd Gen. Contractors of America v. City of Jacksonville, 508 U.S. 656, 663 (1993) (citations omitted). At this stage in the proceeding, we look to the plaintiff's complaint to determine whether these requirements for standing have been met.

20

In construing the plaintiff's complaint, we are of course bound by the Federal Rules of Civil Procedure. Rule 8(e)(2) of those Rules provides that:

A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. ... A party may also state as many separate claims or defenses as the party has, regardless of consistency ....

This Rule permits inconsistency in both legal and factual allegations, see, e.g., Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531, 536 (8th Cir. 1970); Dugan v. Bell Telephone of Pa., 876 F. Supp. 713, 722 (W.D. Pa. 1994); 5 Wright & Miller, Federal Practice & Procedure § 1283, at 533 (1990), and has been interpreted to mean that a court "may not construe [a plaintiff's] first claim as an admission against another alternative or inconsistent claim." Henry v. Daytop Village, 42 F.3d 89, 95 (2d Cir. 1994); Molsbergen v. United States, 757 F.2d 1016, 1019 (9th Cir.), cert. dismissed, 473 U.S. 934 (1985). This is especially the case in circumstances in which proving the plaintiff's alternative claims may require "complex inquiries into the parties' intent." Henry, 42 F.3d at 95.

The district court here failed to afford Independent the privilege of asserting alternative and inconsistent claims. Independent's complaint alleges, inter alia, two inconsistent claims: First, Independent claims that the Authority and the City disqualified it from Authority work, per the instruction in the Sirabella memorandum, in violation of the 1986 consent decree. In connection with this claim, Independent claims that

21

the Authority's asserted reason for rejecting it's Water Line and Grandview Avenue bids, i.e., the alleged failure to comply with the MBE/WBE requirements, was a pretext intended to mask the Authority's disqualification of Independent in a manner which violated the consent decree.  Alternatively, Independent asserts that if the Authority in fact rejected its bids because Independent failed to satisfy the MBE/WBE requirements, that rejection was a violation of Independent's Fourteenth Amendment right to equal protection.  Thus, in accordance with Rule 8(e)(2), Independent's equal protection claim must be examined independently of its contempt claim to determine whether Independent has standing to pursue the claim.

Independent's equal protection claim does allege facts satisfying all of the requirements of standing.  The complaint alleges an injury in fact (the rejection of Independent's bids); causation (that the rejection resulted, according to the Authority, from Independent's inability to meet satisfactorily the Authority's MBE/WBE Utilization Requirements)[7]; and

7.  The Authority argues that Independent's allegation that its bids were rejected "ostensibly" because of its failure to satisfy the MBE/WBE requirements does not constitute an "affirmative allegation" that Independent was precluded from getting the contracts because of the allegedly discriminatory requirements. However, reading the complaint as a whole and clarifying any ambiguities in Independent's favor, it is clear that Independent "affirmatively alleged" that the Authority rejected Independent's bids on the ground that Independent did not satisfy the MBE/WBE requirements.  In accordance with Rule 8(e)(2), if that ground was a pretense for the Authority's impermissible disqualification of Independent from the bidding process, Independent should be allowed to pursue its civil contempt claim.  On the other hand, if failure to satisfy the MBE/WBE requirements was the actual ground for the Authority's rejection of the bids, Independent should be allowed to pursue its claim that rejection on such grounds violates its right to equal protection.

22

redressability (that the injury can be remedied through the award of the contracts or damages and an injunction against future enforcement of the Utilization Requirements).

Turning from standing to the issue of whether Independent has stated a claim on which relief could be granted, we conclude that it has. Independent's complaint alleges that the Authority has established MBE/WBE Utilization Requirements which require that all bidders on certain contracts provide with their bids a "utilization plan" that identifies the portion of work under the contract that will be subcontracted to "certified" minority- or women-owned firms. According to the complaint, bids that do not meet the MBE/WBE utilization goals are rejected. Finally, the complaint alleges that the MBE/WBE Utilization Requirements were not established to remedy past discrimination or passive participation in discrimination by the City or Authority against minority- or women-owned construction companies. These allegations support an equal protection claim under City of Richmond v. J.A. Croson Co., 488 U.S. 468 (1989), in which the Supreme Court held that a race-based MBE utilization program was unconstitutional because it was not narrowly tailored to remedy specific discrimination or "passive participation" in discrimination by the enacting government unit.[8] See also

8. The gender-based preference embodied in the Authority's MBE/WBE Utilization Requirements will be reviewed under "intermediate scrutiny" rather than under the "strict scrutiny" applied to review of race-based preferences. See Contractors' Ass'n of E. Pa. v. City of Phila., 6 F.3d 990, 1000-01 (3d Cir. 1993). Nonetheless, Independent should still be afforded the opportunity to demonstrate the absence of "probative evidence in support of" the gender-based aspect of the Authority's MBE/WBE requirements, id. at 1010, because it has alleged that the

23

<u>Contractors' Ass'n of E. Pa. v. City of Phila.</u>, 91 F.3d 586, 596
(3d Cir. 1996).[9]


C.   <u>The Due Process Claims</u>

Independent further alleges that the Authority deprived
it of property without procedural or substantive due process when
it disqualified Independent and rejected its bids on the Water
Line Contract, the Grandview Avenue Project and the Sewer
Improvement Contract.  The property interest of which it was
allegedly deprived was an interest in these contracts created by
Pennsylvania statutes requiring that public contracts be awarded
to the lowest responsible bidder.  73 P.S. § 1622; 53 P.S. § 312.

(..continued)
Authority adopted the utilization requirements without having
established any history of discrimination against <u>either</u> MBEs or
WBEs.

9.  We decline to accept the Authority's invitation to affirm the
district court's dismissal of the equal protection claim on the
merits on the ground that the MBE/WBE policy is "facially valid."
 The Authority claims that the MBE/WBE Statement that must be
submitted with each bid "itself does not <u>require</u> the use of
minority or women subcontractors but merely requests information
regarding the percentage of such subcontractors that the bidder
intends to use on the project," and thus "does not create a
discriminatory set-aside or quota program" but "serves merely to
identify and guard against discrimination."  Appellees' Brief at
16-17 (emphasis added).  We agree with Independent that this
assertion of the facial validity of the Authority's MBE/WBE
policy "is an argument on the merits inappropriate at the Rule
12(b)(6) motion to dismiss stage."  Appellant's Reply Brief at
12.  At this stage in the proceedings, particularly in light of
the Authority Resolutions that expressly rejected Independent's
Water Line and Grandview Avenue bids "for failure to meet the
MBE/WBE <u>requirements</u>," Auth. Res. 67 & 68, App. at 197-98
(emphasis added), "Independent's allegation that the [Authority]
rejects bids which do not meet the MBE/WBE goals must be taken as
true, and forecloses [the Authority's] assertion that they are
not requirements but merely informational."  Appellant's Reply
Brief at 12 (citations omitted).

24

The remedies that Independent seeks are an injunction barring the Authority from awarding the three contracts to anyone other than Independent, an injunction barring the City and the Authority from refusing to consider Independent a competent bidder on future City contracts, and an award of compensatory and punitive damages. We will affirm the district court's dismissal of Independent's substantive and procedural due process claims, albeit for a reason different from that given by the district court.

The district court dismissed Independent's procedural due process claim on the ground that Pennsylvania law provided a post-deprivation remedy that afforded all the "due process" required by the Fourteenth Amendment. According to the district court, the post-deprivation remedy, of which Independent had attempted to avail itself, consisted of "a judicial procedure for unsuccessful bidders to challenge whether a local contracting authority has violated a bidder's rights under the Municipal Authority Act." Op. at 7-8. The district court apparently reached this conclusion based on a statement in the Authority's Motion to Dismiss that there was a pending state action between the parties. On appeal, however, the parties agree that Pennsylvania law in fact provides no such procedure. Nonetheless, the Authority and the City argue that the district court's dismissal of Independent's procedural due process claim should be affirmed on the alternative ground that their actions did not deprive Independent of any property interest protected by the due process clause.

25

The Supreme Court outlined the parameters of the Fourteenth Amendment's procedural due process protection for property interests in <u>Board of Regents v. Roth</u>, 408 U.S. 564 (1972). First, the Court emphasized that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." <u>Id.</u> at 569. Second, the Court set forth the rationale for affording procedural protection to those property interests that are protected: "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person <u>has already acquired</u> in certain benefits." <u>Id.</u> at 576 (emphasis added). Third, the Court identified the attributes of the property interests protected by procedural due process:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a <u>legitimate claim of entitlement</u> to it."

<u>Id.</u> at 577 (emphasis added). Finally, the Court identified the sources to which courts should look to determine a plaintiff's "entitlement" to a claimed property interest. Property interests, the Court declared, "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." <u>Id.</u>

According to the teachings of <u>Roth</u>, therefore, Independent may not pursue its procedural due process claims against the City and Authority unless "an independent source such

26

as state law" affords it a "legitimate claim of entitlement" to be awarded a municipal contract for which it was the lowest responsible bidder.  Independent relies only on state competitive bidding law as the "independent source" providing its "legitimate claim of entitlement."[10]

Although Pennsylvania's competitive bidding statutes require that public contracts be awarded to the lowest responsible bidder, 53 P.S. § 312(A); 73 P.S. § 1622, Pennsylvania courts have long held that such laws are for the benefit of the public only and do not give a low bidder standing to challenge a municipality's failure to award a contract in accordance with the statute.  See, e.g., R.S. Noonan, Inc. v. School Dist. of York, 162 A.2d 623, 624–25 (Pa. 1960) (citing Commonwealth ex rel. Snyder v. Mitchell, 82 Pa. 343 (1876)); J.P. Mascaro & Sons, Inc. v. Township of Bristol, 505 A.2d 1071, 1074 (Pa. Cmwlth. 1986); see also ARA Servs., Inc. v. School District of Phila., 590 F. Supp. 622, 629 (E.D. Pa. 1984) ("[T]he existence of ... a property interest [in the award of a municipal contract] cannot properly be derived from the regulations and specifications governing the procurement process in light of the Pennsylvania courts' long and consistent refusal to recognize

10. At oral argument, Independent's counsel suggested for the first time that paragraph 4 of the consent decree may have created a property interest for Independent.  This suggestion mistakes a right to a particular process for a substantive right in a contract.  The right to a particular process does not alone create a property interest.  Olin v. Wakinekona, 461 U.S. 238, 250 (1983).  Paragraph 4 gives Independent only a right to a particular kind of hearing; it does not give Independent any more legitimate expectation of receiving a contract than it has without this portion of the consent decree.

27

such an interest."). In R.S. Noonan, for example, the Pennsylvania Supreme Court held that "a disappointed bidder ... sustain[s] no personal injury which entitles him to redress in court." 162 A.2d at 625. Statutes requiring the award of public contracts to the lowest bidder exist solely for the benefit of taxpayers, and only taxpayers suffer a legally cognizable injury from a violation of the statute that entitles them to bring suit. Thus, the statute bestows no legally enforceable right on a bidder prior to the acceptance of its bid. Id.; see also Lutz Appellate Printers, Inc. v. Commonwealth of Pa., 370 A.2d 1210 (Pa. 1977); Highland Express Lines v. Winter, 200 A.2d 300, 303 (Pa. 1964); Regional Scaffolding & Hoisting Co. v. City of Phila., 593 F.Supp. 529, 534 (E.D. Pa. 1984) ("The competitive bidding procedures are designed to protect the taxpayers from the wasteful or fraudulent expenditure of public funds, and create no rights in 'disappointed bidders' who are not also taxpayers.").[11]

---

11. Although the Pennsylvania Supreme Court has dealt only with challenges brought under the bidding statutes themselves, the Pennsylvania Commonwealth Court recently directly addressed the issue of the applicability of the R.S. Noonan standing principle to a due process challenge to the rejection of a low bid. J.P. Mascaro & Sons, Inc. v. Township of Bristol, 505 A.2d 1071 (Pa. Cmwlth. 1986). There, the court concluded that a disappointed bidder "has no standing to assert violations of its due process rights under either the federal or state constitutions as it has no legitimate claim of entitlement to the [municipality's] contract." Id. at 1074. The United States District Court for the Eastern District of Pennsylvania reached the same conclusion in ARA Servs. Inc. v. School District of Phila., 590 F. Supp. 622, 629 (E.D. Pa. 1984), and J.P. Mascaro & Sons, Inc. v. Township of Bristol, 497 F. Supp. 625, 627 (E.D. Pa. 1980). A line of cases from the Western District of Pennsylvania reached a contrary conclusion. E.g., Teleprompter of Erie, Inc. v. City of Erie, 537 F. Supp. 6, 10-11 (W.D. Pa. 1981) and 567 F. Supp. 1277, 1289 (W.D. Pa. 1983); Three Rivers Cablevision, Inc. v.

28

These Pennsylvania cases demonstrate that one who bids on a public contract has no legitimate expectation of receiving it until the contract is actually awarded.  See Highway Express Lines v. Winter, 200 A.2d 300, 303 (Pa. 1964) ("By their bid [the unsuccessful bidders] proposed to contract for certain work; that bid was not accepted.  It was a mere proposal that bound neither party, and as it was never consummated by a contract, the city acquired no right against the [bidders] nor they against the city.").  Since Independent's bids were never accepted, it never acquired an enforceable right with respect to the contract being awarded.  It, therefore, has not been deprived of a property interest that warrants procedural due process protection.

As Independent stresses, the law of this circuit recognizes that "an entitlement may exist for a benefit sought but not yet obtained if state law limits the exercise of discretion by the state official responsible for conferring the benefit."  Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667, 679 (3d Cir. 1991) (citing Winsett v. McGinnes, 617 F.2d 996, 1007 (3d Cir. 1980) (in banc), cert. denied, 449 U.S. 1093 (1981)).  Relying on this authority, Independent urges that the limitations placed on the Authority's discretion by the competitive bidding laws rendered Independent "entitled" to receive the contracts for which it was the low bidder as soon as it submitted its low bids and the Authority decided to award the contracts.  Midnight Sessions and Winsett are inapposite here, (..continued)
City of Pittsburgh, 502 F. Supp. 1118, 1131 (W.D. Pa. 1980).  We find the reasoning of this line unpersuasive.

however. Midnight Sessions involved the deprivation of a portion of a property owner's interest in the use of his real property. Winsett involved prison regulations that mandated work release for an inmate when he satisfied certain criteria. We held that state regulations conferred on the inmate a legally enforceable right to work release. As a result, the inmate had a liberty interest that warranted due process protection. Here, however, under Pennsylvania law Independent clearly had no legally enforceable interest in receiving the contracts and thus had no "entitlement" to the benefit sought.

Finally, we turn to Independent's substantive due process claim. Although the Third Circuit has recognized that a governmental deprivation that comports with procedural due process may still give rise to a substantive due process claim "upon allegations that the government deliberately and arbitrarily abused its power," Midnight Sessions, 945 F.2d at 683 (citing Bello v. Walker, 840 F.2d 1124, 1129–30 (3d Cir.), cert. denied, 488 U.S. 851, and cert. denied, 488 U.S. 868 (1988)), we have also held that a substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a "particular quality of property interest." DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 600 (3d Cir. 1993); see also Homar v. Gilbert, 89 F.3d 1009, 1021 (3d Cir. 1996); Reich v. Beharry, 883 F.2d 239, 244 (3d Cir. 1989) ("[I]n this circuit at least, not all property interests worthy of procedural due process protection are protected by the concept of substantive due

30

process."). [12]  Although our court has suggested that only

fundamental property interests are worthy of substantive due

process protection, DeBlasio, 53 F.3d at 599, it has provided

little additional guidance regarding what specific property

interests should receive substantive due process protection:

> We have held that "ownership is a property interest
> worthy of substantive due process
> protection," [DeBlasio, 53 F.3d at 600], but
> we have found that neither interest in prompt
> receipt of payment for professional services

12.  Although Bello and Midnight Sessions both contained
language indicating that substantive due process is violated
whenever a governmental entity deliberately or arbitrarily abuses
government power by, for example, taking actions that are
motivated by bias, bad faith, or partisan or personal motives
unrelated to the merits of the matter before it, Midnight
Sessions, 945 F.2d at 683; Bello, 840 F.2d at 1129; see also
Blanche Rd. Corp. v. Bensalem Township, 57 F.3d 253, 267-68 (3d
Cir.), cert. denied, 116 S. Ct. 303 (1995); Neiderhiser v.
Borough of Berwick, 840 F.2d 213, 217 (3d Cir.), cert. denied,
488 U.S. 822 (1988), we do not read the cases to stand for that
broad principle.  The court in Midnight Sessions expressly stated
that it was assuming, without deciding, that the plaintiffs were
entitled to substantive due process in the consideration of their
applications for dance hall licenses.  945 F.2d at 682 n.11.
Moreover, all of the cases involved zoning decisions, building
permits, or other governmental permission required for some
intended use of land owned by the plaintiffs, matters which were
recognized in DeBlasio as implicating the "fundamental" property
interest in the ownership of land.  53 F.3d at 600.  Thus, in
light of the court's explicit statement in DeBlasio that some
"particular quality of property interest" must be infringed
before substantive due process protection may be invoked, id. at
600, these cases cannot be understood as affording substantive
due process protection from every arbitrary and irrational
governmental act, but only for those that deprive the plaintiff
of a fundamental property right "implicitly protected by the
Constitution."  Id. at 599; see also Blanche Rd., 57 F.3d at 268
(plaintiffs stated a substantive due process claim because they
claimed that defendants "acted deliberately and under color of
state law to deprive them of their property rights by interfering
in and delaying the issuance of permits") (emphasis added);
Neiderhiser, 840 F.2d at 218 ("[I]f [plaintiff] can successfully
demonstrate that the [town] arbitrarily and irrationally denied
the [zoning] exemption, visiting a constitutional deprivation on
[plaintiff], then [plaintiff] may prevail on its due process
claim.") (emphasis added).

> provided to the state, <u>Reich</u>, 883 F.2d at 244-45, nor state law entitlement to water and sewer services, <u>Ransom v. Marrazzo</u>, 848 F.2d 398, 411-12 (3d Cir. 1988), are the "certain quality" of property interest worthy of substantive due process protection. We have also strongly suggested in dictum that a student's right to continued enrollment in a graduate program does not rise to such a level on the ground that such an interest bears "'little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution.'" <u>Mauriello v. Univ. of Med. & Dentistry of N.J.</u>, 781 F.2d 46, 40 (3d Cir. 1986) (quoting <u>Regents of Univ. of Michigan v. Ewing</u>, 474 U.S. 214, 229-30 (Powell, J., concurring).

<u>Homar</u>, 89 F.3d at 1021.

We will leave for another day definition of the precise contours of the "particular quality of property interest" entitled to substantive due process protection. We have no difficulty in concluding that the property interest alleged to have been infringed here, which we have concluded is not entitled to <u>procedural</u> due process protection, is not the sort of "fundamental" interest entitled to the protection of <u>substantive</u> due process. Accordingly, we conclude that Independent has failed to state either a procedural due process claim or a substantive due process claim upon which relief can be granted.

## IV.  Conclusion

We will reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

32