

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2000

# Boyanowski v. Capital Area

Precedential or Non-Precedential:

Docket 98-7324 98-7349

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Boyanowski v. Capital Area" (2000). *2000 Decisions.* Paper 131.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/131

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 98-7324 and 98-7349

DONALD BOYANOWSKI, Individually; DONALD
BOYANOWSKI, tdba, Boyo Transportation Services Inc.;
DOROTHY BOYANOWSKI; BOYO TRANSPORTATION

SERVICES INC.; MICHAEL LABALOKIE

v.

CAPITAL AREA INTERMEDIATE UNIT; JOHN E. NAGLE;
ED FRYE; *ROGER MORRISON, Individually; MARK
BAUER; *WEST PERRY SCHOOL DISTRICT

CAPITAL AREA INTERMEDIATE UNIT; JOHN E. NAGEL;
ED FRYE, Appellants in 98-7324

DONALD BOYANOWSKI; MICHAEL LABALOKIE,

Appellants in 98-7349

*Dismissed - Per Court's order of 7/26/99.

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 94-cv-01252)
District Judge: Honorable Sylvia H. Rambo

Argued: September 23, 1999

Before: BECKER, Chief Judge, and GARTH, Circuit Judge

and POLLAK, District Judge.**

(Filed: June 14, 2000)

_____

** Honorable Louis H. Pollak, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

STUART L. KNADE, ESQUIRE
 (ARGUED)
Pennsylvania School Boards
 Association
774 Limekiln Road
New Cumberland, PA 17070-2398

Counsel for Capital Area
Intermediate Unit John E. Nagle
and Edward T. Frye

DONALD A. BAILEY, ESQUIRE
 (ARGUED)
Suite 209
3540 North Progress Avenue
Harrisburg, PA 17110

Counsel for Donald Boyanowski;
Dorothy Boyanowski; Boyo
Transportation Services, Inc.; Michael
Labalokie; Donald Boyanowski
t/d/b/a/ Boyo Transportation
Services, Inc.

SAMUEL C. STRETTON, ESQUIRE
301 South High St.
P.O. Box 3231
West Chester, PA 19381

Counsel for Michael Labalokie and
Donald Boyanowski

OPINION OF THE COURT

BECKER, Chief Judge.

These appeals arise from a judgment entered in the District Court on separate jury verdicts in favor of a transportation contractor and his wife in their respective civil rights and civil conspiracy suits against a local government entity and its officials. Donald Boyanowski alleged that his efforts to furnish transportation services to school districts failed because of conduct by local officials that violated his substantive due process rights. Dorothy

2

Boyanowski claimed to have been the victim of a civil conspiracy by two local officials that prevented her from receiving contracts to work as a bus driver. The appeal of the verdict in Donald Boyanowski's favor requires consideration of the relation, and separation, between federal constitutional and state tort actions. The appeal of the verdict in Dorothy Boyanowski's favor presents the question whether a plaintiff 's verdict for (state law) civil conspiracy can survive when the jury has found for the defendant on the underlying tort.

The first verdict, in favor of Donald Boyanowski and against his former employer, the Capital Area Intermediate Unit ("CAIU"), was entered on his claim that the CAIU's conduct violated his substantive due process rights. He also won a verdict against John Nagle, who had been executive director of the CAIU, but the District Court set it aside on qualified immunity grounds. Mr. Boyanowski's claims are essentially state tort defamation claims that do not implicate a federal constitutional interest. Constitutional claims of this sort have been implicitly rejected by the Supreme Court, see Siegert v. Gilley, 500 U.S. 226 (1991), and find no basis in our jurisprudence. We will therefore set aside the jury verdict in Mr. Boyanowski's favor. In light of our conclusion that he has not been deprived of constitutionally protected rights, there is no need to consider his cross-appeal of the District Court's decision to grant Nagle qualified immunity.

The second verdict, in favor of Dorothy Boyanowski against two CAIU officials, is for civil conspiracy. She claimed that officers of the CAIU conspired to interfere with her contract rights as part of their campaign against her husband. The jury found in her favor on her civil conspiracy complaint while rejecting her claim for tortious interference with contract. In light of the jury'sfinding that the underlying tort did not occur, we conclude that the civil conspiracy claim can not survive. See GMH Assoc., Inc. v. Prudential Realty Group, CB, ___ A.2d ___, No. 198 EDA 1999, 2000 WL 228918 (Pa. Super. Ct. March 1, 2000); Pelagatti v. Cohen, 536 A.2d 1337 (Pa. Super. Ct. 1987). We will therefore set aside the verdict on civil conspiracy as well, and remand with directions to enter judgment for the defendants on all counts.

3

I.

The CAIU is a governmental entity operating under Pennsylvania's public school laws. Intermediate units ("IUs") are part of the state's public school system and operate service programs that are open to the local public school districts assigned to each intermediate unit. See Pa. Stat. Ann. tit. 24 S 9-951 et seq. The board of directors of the IU is elected from the boards of directors of the component school districts. See id. S 9-960. The CAIU is one of twenty-nine IUs in the state. See id.S 9-952. The CAIU provides transportation for disabled children to and from classes and programs throughout the unit's region. It does so through a combination of employees and independent contractors. Prior to his retirement in July 1993, defendant John Nagle, as is noted above, was Executive Director of the CAIU. Defendant Edward Frye was the Assistant Executive Director and succeeded Nagle as Executive Director.

Until his retirement in March 1993, Donald Boyanowski was the CAIU transportation supervisor. After retiring, he established Boyo Transportation Services, Inc. ("Boyo"), which sought to contract for special transportation services with the member school districts of the CAIU. This entailed convincing them to no longer acquire such services through the CAIU. Mr. Boyanowski was therefore effectively competing with his former employer. Having been unsuccessful in persuading any member districts to accept his contract proposals, he brought suit under 42 U.S.C. S 1983, contending that his lack of success was the product of a violation of his substantive due process rights. At trial, he produced evidence that Nagle unfairly blamed him for rising costs of the CAIU program that occurred while he was a supervisor, and had referred to Mr. Boyanowski as a "crook" in a meeting of the CAIU superintendents council. Mr. Boyanowski alleged these actions were part of a concerted effort to keep him from obtaining any contracts.

The jury found that the CAIU's and Nagle's conduct violated Mr. Boyanowski's substantive due process rights, and awarded compensatory damages in the amount of $50,000 against the CAIU and $100,000 against Nagle. The jury also awarded $100,000 in punitive damages against

4

Nagle. On post-trial motions, the District Court ruled that Nagle was entitled to qualified immunity on the substantive due process claim, and it set aside the verdict and damages against him. The CAIU appeals the substantive due process judgment against it, and Mr. Boyanowski cross appeals the grant of qualified immunity to Nagle.

The jury also considered several claims brought by Dorothy Boyanowski. She had been employed as an independent contractor bus driver for the CAIU. After her husband established Boyo, Ms. Boyanowski's contract was not renewed. She contended that Frye and Nagle engaged in conduct that amounted to tortious interference with contract against her as well as a civil conspiracy. She produced evidence at trial not only that her contract was not renewed, but also that Frye had made statements that were relayed to one of CAIU's busing contractors that hiring her would not be a "good idea," and that this communication occurred while Nagle was still in charge. Ms. Boyanowski also produced evidence that Nagle had sent her a letter informing her that her contract would not be renewed. The jury found for the defendants on the tortious interference with contract claim, but ruled in Ms. Boyanowski's favor as to the civil conspiracy, awarding her $50,000 against Nagle and $100,000 against Frye. The defendants also appeal this judgment.

The District Court had jurisdiction over Donald Boyanowski's civil rights claim under 28 U.S.C.SS 1331, 1343. It had supplemental jurisdiction over Dorothy Boyanowski's state law claims pursuant to 28 U.S.C. S 1367. Our jurisdiction over the District Court's final order is based on 28 U.S.C. S 1291. Our review of all legal questions is plenary.

II.

The core of due process is the protection against arbitrary governmental action and has procedural and substantive components. See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures

5

that it employs, and covers government conduct in both legislative and executive capacities. See id. at 846. The CAIU's appeal requires us to address executive conduct alleged to have infringed upon Donald Boyanowski's rights as protected by the Due Process Clause of the Fourteenth Amendment.

Unfortunately for Mr. Boyanowski, his substantive due process claim is properly read as a state law defamation claim. This is even made clear by his own brief, which indicates that his S 1983 claim is based on defamation and exists solely to circumvent Pennsylvania sovereign immunity against state tort claims. As the Boyanowskis' brief recites:

> According to appellants, if a government entity is interested in doing business, and in the process uses its political power and muscle to systematically destroy the business opportunities of a competing private citizen through slur, innuendo, and outright false accusations, then the misconduct is simply not actionable. In Pennsylvania sovereign immunity protects government from tortious interference with contracts suits. Appellants know there is no adequate recourse under state defamation law also because of sovereign immunity statutes.

Appellee's Br. at 8 (emphasis added). Of course the lack of availability of a state law remedy will not serve to elevate an ordinary tort to a constitutional violation. The degree to which Pennsylvania wishes to waive sovereign immunity claims for state causes of action is the quintessence of a state law question.

In instructing the jury on Mr. Boyanowski's substantive due process claim, the District Court charged:

> You must first decide if each of plaintiffs were deprived of a fundamental right. You are advised that there is no constitutionally protected right to obtain future government contracts, and that suspension or debarment from bidding on government contracts may be a basis for liability only if it is based upon a charge of fraud or dishonesty.

6

Plaintiffs must therefore show that the government officials stigmatized plaintiff by publishing charges of fraud or dishonesty which were substantially and materially false, and that the defendants making them knew they were false or had serious doubts about the truth of these statements, and that those statements had the effect of preventing plaintiff from engaging in the transportation business.

App. 100.

Assuming arguendo that the jury's verdict for Mr. Boyanowski on this charge was supported by the evidence, we must determine if the substance of the charge was correct, i.e., whether defamatory statements that curtail a plaintiff 's business opportunities suffice to support a substantive due process claim. At the outset of this inquiry, we must be mindful of the Supreme Court's commands in addressing the interplay of constitutional and state tort law. First, the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." Paul v. Davis, 424 U.S. 693, 701 (1976). Second, we must remember that"[a]s a general matter, the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." Collins v. City of Harker Heights , 503 U.S. 115, 125 (1992) (citation omitted). Addressing the substantive due process claim, therefore, requires scrupulous attention to the guideposts that have previously been established.

A.

We note preliminarily that establishing a substantive due process claim even when executive action has infringed an interest protected by the Due Process Clause is difficult. "Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be `arbitrary in the constitutional sense. . . .' " County of Sacramento v. Lewis, 523 U.S. 833,

7

846 (1998) (quoting Collins v. Harker Heights , 503 U.S. 115, 129 (1992)) (emphasis added). For executive conduct, the Supreme Court has "for half a century now . .. spoken of the cognizable level of executive abuse of power as that which shocks the conscience." See id. Determining whether the challenged action rises to this level has been described as a "threshold" question in a challenge to an executive action. See id. at 847 n.8 ("[T]he threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. . . . Only if the necessary condition of egregious behavior were satisfied would there be a possibility of recognizing a substantive due process right to be free of such executive action . . . .").

Though we construe the trial record in Mr. Boyanowski's favor, we cannot agree that the conduct of which he complains rises to the level required by the Supreme Court in Lewis. The statements allegedly made about Donald Boyanowski--that he was a "crook" and was responsible for cost overruns of the CAIU's transportation program--had no direct legal effect upon him. He was not prohibited from bidding on contracts or otherwise restricted in his conduct, and the comments were not publicized in a manner that would humiliate him before the community at large. At least one of our sister circuits has found that far more defamatory statements did not rise to a conscience-shocking level for substantive due process purposes. See Mertik v. Blalock, 983 F.2d 1353, 1367-68 (6th Cir. 1993) (affirming district court conclusion that banning coach from city ice rink and publishing to third parties false statements that coach was sexually abusing minor students did not rise to conduct that shocked the court's conscience). The evidence in this case does not rise to the level of truly egregious conduct that is required for a substantive due process claim as described by the Supreme Court in Lewis. At worst, the evidence indicates sharp business practices by a competitor.

It is true that Lewis teaches that what "shocks the conscience" varies from circumstance to circumstance. See Lewis, 523 U.S. at 850 ("Deliberate indifference that shocks in one environment may not be so patently egregious in

8

another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking."). We need not, however, definitively calibrate the egregiousness level that Lewis would require of a defamation-type claim because other precedent makes clear that this sort of claim cannot present a substantive due process violation in thefirst place.

B.

The Supreme Court has made clear that federal courts are not to view defamatory acts as constitutional violations. In Paul v. Davis, 424 U.S. 693 (1976), a procedural due process case, the Court held that defamation by itself did not harm a "liberty" interest protected under the Fourteenth Amendment. Paul involved a plaintiff whose name and photograph appeared on a police flyer that was captioned "Active Shoplifters" and distributed among merchants. The Court turned aside a procedural due process claim on the grounds that harm to reputation alone did not suffice for a constitutional tort based on procedural due process. See id. at 711-12. Although the claim was based in procedural due process, the Court's holding was that the interest in reputation was neither "liberty" nor "property" that was protected by the Due Process Clause. See id. at 712.

Even more relevant to the case at hand is the Court's return to the issue in Siegert v. Gilley, 500 U.S. 226 (1991). In Siegert, the plaintiff was a clinical psychologist who had been employed by a federally operated hospital in Washington, D.C. He resigned his post, rather than face termination, and found another position at a U.S. Army hospital in West Germany. That position required "credentialing," the securing of which required plaintiff to ask his former employer to provide information to the Army facility. In response to the request, his former supervisor wrote a letter that labeled plaintiff as inept, unethical, and untrustworthy. Plaintiff was subsequently denied the necessary credentials and ultimately lost his position. He then brought a Bivens action against his former supervisor.

9

See id. at 228–29. The Supreme Court rejected the claim. Though the Court acknowledged that defamation injuries do indeed lead to monetary losses that flow from the injury to reputation, it stated that "so long as such damage flows from injury caused by the defendant to a plaintiff 's reputation, it may be recoverable under state tort law but it is not recoverable in a Bivens action." Id. at 234. "The statements contained in the letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects. But the plaintiff in Paul v. Davis similarly alleged serious impairment of his future employment opportunities as well as other harm." Id. The Court therefore concluded that Siegert failed to allege a constitutional deprivation. See id. at 233–34.

Donald Boyanowski also alleged that harm flowed from the statements made about him insofar as he was unable to receive any of the contracts for which he bid. We do not see how his harm was of a different nature from that alleged in Siegert. Both plaintiffs alleged harm flowing from defamatory statements made by former employers. It is therefore hard to see how Siegert is not fatal to the substantive due process claim.[1] Even if Siegert is construed strictly as a procedural due process case, it does not support the claim because Siegert declares that the claim of harm flowing from the defamatory statement is not a liberty interest protected by the Due Process Clause. Cf. Reich v. Beharry, 883 F.2d 239, 244 (3d Cir. 1989) ("[I]n this circuit at least, not all property interests worthy of procedural due process protection are protected by the concept of

_____

1. The similarity of harms in the two cases also would appear to doom any effort to link the "stigma plus" analysis that has characterized procedural due process cases that have arisen in wake of Paul v. Davis and concern defamatory statements, see, e.g., Ersek v. Township of Springfield, 102 F.3d 79, 83 n.5 (3d Cir. 1996), with the substantive due process claim urged by Mr. Boyanowski. Even if we were to entertain such an application, our precedents are decidedly against such claims. See, e.g., Kelly v. Borough of Sayreville, 107 F.3d 1073, 1078 (3d Cir. 1997) ("[E]ven financial injury due solely to government defamation does not constitute a claim for deprivation of a constitutional liberty interest."); Sturm v. Clark, 835 F.2d 1009, 1012–13 (3d Cir. 1987) ("Most, if not all, charges of defamation are inevitably accompanied by financial loss.").

10

substantive due process."); In re Selcraig , 705 F.2d 789, 796 (5th Cir. 1983) (rejecting substantive due process claim arising from stigmatization of discharged employee but discussing potential availability of procedural name-clearing hearing). Indeed, it would be an odd result to hold that the CAIU was free to stigmatize Mr. Boyanowski without providing him with procedural protections from the statements, but was not free to make the statements without incurring liability under the Constitution. Upholding the substantive due process claim, therefore, would not be supported by Supreme Court precedent.

Neither does Mr. Boyanowski's claim find refuge in those Third Circuit cases that have upheld substantive due process claims. We have recognized substantive due process claims in certain limited circumstances when the existence of procedural due process protections is not at issue. See, e.g., Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 (3d Cir. 1997). We have never, however, suggested that a substantive due process cause of action lies for the kind of claim pursued in the District Court.

Independent Enterprises, Inc. v. Pittsburgh Water and Sewer Authority is perhaps the most analogous precedent. The facts in that case presented a stronger basis for a substantive due process claim than do those in the case at hand because there was evidence of direct interference by executive actors with the procurement of contracts. The plaintiff was a contractor who had entered into a consent decree with a city water and sewer authority. That decree precluded the contractor's being barred based on past performance from bidding on city contracts. In subsequent bids, the contractor was the low bidder on two contracts and received neither. In one case, the contracting authority was ordered to halt awarding contracts to the contractor because of a cost overrun in a recent project. These actions appeared to violate the consent decree, which provided that the contractor could not be "disqualified" based on post-decree performance absent a hearing under local law. See id. at 1168-69.

In ruling whether those facts could be used to state a substantive due process claim, we summarized our substantive due process jurisprudence as follows:

11

Although the Third Circuit has recognized that a governmental deprivation that comports with procedural due process may still give rise to a substantive due process claim "upon allegations that the government deliberately and arbitrarily abused its power," we have also held that a substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a "particular quality of property interest." Although our court has suggested that only fundamental property interests are worthy of substantive due process protection, it has provided little additional guidance regarding what specific property interests should receive substantive due process protection.

Id. at 1179 (citations omitted).

Though it ultimately "le[ft] for another day definition of the precise contours of the `particular quality of property interest' entitled to substantive due process protection," id. at 1180, the Independent Enterprises panel observed that the infringed interest must be a concrete one:

We have held that "ownership is a property interest worthy of substantive due process protection," [DeBlasio v. Zoning Bd. of Adjustment for the Township of West Amwell, 53 F.3d 592, 600 (3d Cir. 1995)], but we have found that neither interest in prompt receipt of payment for professional services provided to the state, Reich, 883 F.2d at 244–45, nor state law entitlement to water and sewer services, Ransom v. Marrazzo, 848 F.2d 398, 411–12 (3d Cir. 1988), are the "certain quality" of property interest worthy of substantive due process protection. We have also strongly suggested in dictum that a student's right to continued enrollment in a graduate program does not rise to such a level on the ground that such an interest bears " `little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution.' " Mauriello v. Univ. of Med. & Dentistry of N.J., 781 F.2d 46, 50 (3d Cir. 1986) (quoting Regents of Univ. of Michigan v. Ewing , 474

12

        U.S. 214, 229-30, 106 S.Ct. 507, 516, 88 L.Ed.2d 523
        (Powell, J., concurring)).

Id. at 1180 (quoting Homar v. Gilbert , 89 F.3d 1009, 1021
(3d Cir. 1996), rev'd on other grounds, 520 U.S. 924
(1997)).

Applying this precedent, we ruled that the facts in
Independent Enterprises did not give rise to a viable
substantive due process claim, observing that we had"no
difficulty" in concluding that the alleged interest was not
the sort of fundamental interest protected by substantive
due process. See id. We view the facts in Independent
Enterprises, where defendants actively prevented plaintiffs
from winning contracts in violation of a consent decree, as
constituting a more compelling claim that a protected
interest had been violated than that proffered by Donald
Boyanowski, who was never barred from having his bids
considered. There is no basis in our substantive due
process precedent for according him the relief that he
seeks.

C.

The District Court's jury instruction characterized the
issue at stake as Donald Boyanowski's liberty interest to
engage in the transportation business. In its denial of
CAIU's post-trial motion, the District Court defended this
characterization by referring to Meyer v. Nebraska, 262
U.S. 390 (1923). The District Court described Donald
Boyanowski's defamation-based damages as "derived from a
fundamental liberty interest to engage in the common
occupations of life protected by the Fourteenth
Amendment." Op. at 10 (citing Meyer, 262 U.S. 390, 399
(1923)).

As discussed above, our precedent has never read
substantive due process as extending as far as did the
District Court. Contrary to that court, we do not view Meyer
as helpful to the substantive due process claim before us.
Meyer involved a prosecution of a teacher who violated a
statutory bar on the teaching of a foreign language. In
reversing the conviction on due process grounds, the
Supreme Court uttered the broad and celebrated language

13

about the right to engage in any of the common occupations of life, on which the District Court's opinion relies. See Meyer, 262 U.S. at 399. The case turned, however, on a direct bar to the teacher's teaching, as well as the concurrent interference in parental rights over children. See id. at 400. The more analogous situation for Mr. Boyanowski, if Meyer were relevant, would have involved a prosecution targeting him for the mere act of bidding on transportation contracts. His actual situation was too remote from the facts of Meyer for that case to have particular applicability.

The Supreme Court has already held that Meyer may not be read to constitutionalize all executive actions that affect the pursuit of a profession in any way. See Conn v. Gabbert, 119 S. Ct. 1292 (1999). In Conn, the Court rejected an attorney's attempt to claim that a search warrant executed upon him while his client was testifying before a grand jury violated the attorney's Fourteenth Amendment right to practice his profession. In so doing, the Court focused on the language of Meyer on which the District Court relies here, but specifically rejected its application to the plaintiff 's circumstances. See id. at 1295. We similarly view Meyer as too slender a reed on which to rest Mr. Boyanowski's substantive due process claim.

Moreover, the approach taken by the District Court would subsume broad categories of tort law under the constitutional aegis. Equating a defamatory statement that leads to a third party's not extending a contract to a frustrated plaintiff with the deprivation of the plaintiff 's legal right to engage in the common occupations of life in a manner protected by the Fourteenth Amendment goes too far. It is true that such an action has some effect on an individual's ability to navigate the often treacherous waters of government contracting, but to leap to the broad level of generality necessary to classify the harm in substantive due process terms would constitutionalize broad swaths of state tort law.

If Donald Boyanowski's claim can survive, the same could be said for any number of mundane state tort cases that lack a clear constitutional basis. In addition to implicitly overruling the Supreme Court's holding in Siegert,

14

upholding the verdict would ignore the Supreme Court's twin commands that the Fourteenth Amendment not become a font of tort law that supplants state systems, see Paul, 424 U.S. at 701, and that the cause of action encompassed by substantive due process not be expanded without extreme care, see Collins, 503 U.S. at 125.

Because Donald Boyanowski's claim, the record evidence, and the District Court's jury instruction all point to a state law defamation claim and not a constitutional substantive due process claim, we will reverse the judgment entered on the jury verdict in favor of Mr. Boyanowski on his substantive due process claim against the CAIU. Our ruling in this regard moots his cross-appeal as to the District Court's grant of qualified immunity to Nagle.

III.

We turn to Dorothy Boyanowski's jury verdict for civil conspiracy against Frye and Nagle. The defendants offer an array of arguments in support of our setting aside the verdict. First, they submit that the jury's verdict in their favor as to the underlying tort of tortious interference with contract requires dismissal of the civil conspiracy verdict. Second, they contend that the defense verdict on the tort claim vitiates any award of damages on the conspiracy claim. Third, the defendants argue that they had no legal capacity to conspire; they submit that because under Pennsylvania precedent a corporation cannot conspire with itself, Dorothy Boyanowski had to prove that Frye or Nagle was acting outside the scope of his duty for personal reasons. Fourth, the defendants claim that there was no evidence of a concerted action or common scheme necessary to sustain a conspiracy finding. Fifth, the defendants assert that no evidence was presented indicating that Frye and Nagle willfully engaged in unlawful conduct, and that such evidence is a prerequisite for the removal of their statutory immunity under Pennsylvania law. Furthermore, the defendants submit that Frye and Nagle should have been given absolute immunity as "high public officials." Finally, the defendants claim that there was insufficient evidence to support the jury's verdict against them on the claim of civil conspiracy.

15

Many of these assignments of error pertain to the sufficiency of the evidence presented by Ms. Boyanowski at trial. Unfortunately, rather than provide any citations to the record in their brief on appeal, which consisted mostly of assertions that were unsupported by citation, legal or otherwise, the Boyanowskis' counsel elected simply to submit several volumes of trial transcript, refer to the trial record as a whole, and unhelpfully tell this Court that "only a review of the entire record can totally illuminate the entire picture heard by the jury." Appellees' Br. at 14. At oral argument the panel afforded counsel a second opportunity to point to specific instances in the record that supported the jury's findings in this matter. Although the evidence in the record finally cited by the Boyanowskis' lawyer is exceedingly thin, possibly to the point of justifying reversal on insufficiency grounds alone, we need not consider the weight of the evidence presented at trial because the issue can ultimately be disposed of on the defendants'first assignment of error.

In their brief, the defendants point to Pennsylvania precedent that holds that a claim of civil conspiracy cannot be pled without also alleging an underlying tort. See, e.g., Nix. v. Temple Univ., 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991); Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987). They fail, however, to cite authority for the proposition that once an underlying tort has been alleged, only a finding that the underlying tort has occurred will allow an appellate court to sustain a similar finding on the civil conspiracy charge. The rule that civil conspiracy may not exist without an underlying tort is a common one. See In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 & n.7 (3d Cir. 1999) (collecting cases). Indeed, "we are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct." Id. at 789. It is not surprising that there are few cases dealing with the sort of mixed verdict we have here, as a jury would not logically be expected to determine that civil conspiracy occurred, but that the underlying tort did not. Candidates for such verdicts would usually be screened out at the summary judgment or pleading stage, and that is indeed where most precedents that state the underlying tort rule are to be found. We must therefore

16

predict whether the Pennsylvania Supreme Court would apply a rule that is normally employed at the pleading stage to overturn a jury verdict for civil conspiracy in a plaintiff 's favor. We predict that it would.

In predicting how a matter would be decided under state law we examine: (1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting the state law; and (4) decisions from other jurisdictions that have discussed the issues we face here. See Wiley v. State Farm Fire & Cas. Co., 995 F.2d 457, 459–60 (3d Cir. 1993). While we lack a clear statement from the Pennsylvania Supreme Court on the precise question at issue, a panel of the Pennsylvania Superior Court recently decided a case that would decisively resolve the issue if we follow the resulting precedent. See GMH Assoc., Inc. v. Prudential Realty Group, CB, ___ A.2d ___, No. 198 EDA 1999, 2000 WL 228918 (Pa. Super. Ct. March 1, 2000).

GMH arose out of a failed real estate transaction. The trial court, sitting without a jury, found defendants liable to plaintiffs for breach of contract, breach of duty to negotiate in good faith, promissory estoppel, fraudulent misrepresentation, fraudulent non-disclosure, and civil conspiracy. See id. at *5. On appeal, the Pennsylvania Superior Court concluded that no fraud had actually occurred. See id. at *10. The claim of fraud was the underpinning for the civil conspiracy claim. See id. at *13. Because the fraud claim was set aside, the court held that the civil conspiracy claim could not survive:

> [Plaintiffs'] conspiracy claims were based on the allegation that all defendants conspired to defraud [plaintiff]. Because we conclude that no fraud was committed, we correspondingly find that no civil conspiracy to defraud occurred. See generally [Rutherford v. Presbyterian-Univ. Hosp., 612 A.2d 500, 508 (Pa. Super. 1992)] (citing Rose v. Wissinger, 294 Pa. Super. 265, 439 A.2d 1193 (1982) (where complaint fails to set forth claim for defamation or outrageous conduct causing emotional distress, there could be no conspiracy to commit those acts); and

17

> Raneri v. DePolo, 65 Pa.Cmwlth. 183, 441 A.2d 1373,
> 1376 (Pa.Cmwlth. 1982) (under Pennsylvania law,
> when a party fails "to sufficiently allege in[other]
> counts any unlawful act or unlawful means" the
> conspiracy claim must also fail when it is based on
> these claims)).

Id.

As the quoted passage makes clear, the court did not
dismiss the conspiracy claims based on an independent
evaluation of their viability in light of the record developed
by the trial court. Rather, the failure of the underlying
fraud claim sufficed as a matter of law to vitiate the finding
of civil conspiracy notwithstanding the fact that it had been
successfully pled as an independent cause of action.

An intermediate appellate state court's decision"is a
datum for ascertaining state law which is not to be
disregarded by a federal court unless it is convinced by
other persuasive data that the highest court of the state
would decide otherwise." West v. American Telephone & Tel.
Co., 311 U.S. 223, 237 (1940). We not only conclude that
GMH is persuasive on its logic, but rather thanfinding
sufficient contrary persuasive data, we find other factors
that counsel that we follow the GMH court.

The precept employed by GMH is logically sound. It is
sensible that the rule requiring the existence of an
underlying tort in the pleading stage similarly requires that
the tort be proven if a civil conspiracy claim is to prevail. To
be sure, there are arguments to the contrary. One could
argue the reverse inference and maintain that the jury's
finding that there was a civil conspiracy against Dorothy
Boyanowski that caused damage means that the jury's
ruling for the defendants in the tortious interference of
contract claim was actually the legally incorrect one.
Another argument is that the two causes of action,
whatever their linkage in the pleading stage, are distinct.
Inconsistent jury verdicts are an unfortunate fact of life in
law, and should not, in and of themselves, be used to
overturn otherwise valid verdicts. Cf. Mosley v. Wilson, 102
F.3d 85, 90–91 (3d Cir. 1996) (ruling that district court
erred as a matter of law when it directed judgment

18

notwithstanding the jury's verdict on one claim on the sole ground that it was inconsistent with the jury's verdict on another claim).

We nonetheless believe that the defendants' reading is the better one in light of the nature of civil conspiracy. "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983). A verdict on civil conspiracy should yield to a finding for the defendant on the underlying tort because the cause of action is wholly subordinate to the underlying tort's existence. We also are supported by the fact that courts in other jurisdictions have made similar holdings to that in GMH when faced with similar circumstances. See K&S Partnership v. Continental Bank, N.A., 952 F.2d 971, 980 (8th Cir. 1991); see also Akins v. Zeneca, Inc. , 62 F.3d 1417, 1995 WL 452087, (6th Cir. July 27, 1995) (affirming district court's dismissal of civil conspiracy claim after close of plaintiff 's evidence because of failure to prove underlying tort).

In light of the clear statement by the Pennsylvania Superior Court, practice in other jurisdictions, and what we perceive as the logical rule, we predict that if faced with this matter, the Pennsylvania Supreme Court would reverse Dorothy Boyanowski's judgment for civil conspiracy. We therefore need not reach the defendants' other arguments for reversing the verdict.

The judgment of the District Court will be reversed, with direction to enter judgment in favor of the defendants on all counts.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit