**HEALTHAMERICA PENNSYLVANIA, INC., Coventry Health and Life Insurance Company, and Coventry Heatlhcare Management Corporation, Plaintiffs**

v.

**SUSQUEHANNA HEALTH SYSTEM, The Williamsport Hospital & Medical Center, Divine Providence Hospital, Muncy Valley Hospital, And Susquehanna Physician Services, Defendants**

No. 3:00CV1525.

United States District Court,
M.D. Pennsylvania.

April 17, 2001.

William G. Kopit, Tanya B. Vanderbilt, Epstein Becker & Green, P.C., Washington, DC, for HealthAmerica Pennsylvania, Inc., Coventry Health and Life Ins. Co., Coventry Healthcare Management Corp.

J. David Smith, McCormick Reeder Nichols Sarno Bahl & Knecht, Williamsport, PA, Mark L. Mattioli, Post & Schell, P.C., Philadelphia, PA, Brian M. Peters, Philadelphia, PA, Jonathan B. Sprague, Post & Schell, Philadelphia, PA, John J. Miles, Ober, Kaler, Grimes & Shriver, Washington, DC, for Susquehanna Health System, Williamsport Hosp. & Medical Center, Divine Providence Hosp., Muncy Valley Hosp., Susquehanna Physicians Services.

### *MEMORANDUM*

MUNLEY, District Judge.

Before the court for disposition is the defendants' motion to dismiss count III of the amended complaint. The plaintiffs are: Health America Pennsylvania, Inc., a managed health care plan that offers health maintenance organization (HMO) product in Northcentral Pennsylvania; Coventry Health and Life Insurance Company, an insurance company that offers a point of service product and a preferred provider organization product in Northcentral Pennsylvania; and Coventry Healthcare Management Corporation, a third-party administrator that administers self-insured health insurance products in

Northcentral Pennsylvania. The first named defendant is Susquehanna Health System, (hereinafter "SHS") a health care system offering hospital, physician and other health care services in Northcentral Pennsylvania. Susquehanna Health System includes the following three hospitals that are also named as defendants: The William sport Hospital and Medical Center; Divine Providence Hospital; and Muncy Valley Hospital. The final defendant is Susquehanna Physician Services, (hereinafter "SPS"), the largest physician group in Lycoming County, Pennsylvania. It employs over 40 percent of the primary care physicians practicing in that county and is wholly owned and controlled by SHS. For the reasons that follow the defendants' motion to dismiss will be denied.

**Background**

As alleged in plaintiffs' complaint,[1] the facts are as follows: In 1994, the two dominant hospital systems in Northcentral Pennsylvania region (Providence Health System and North Central Pennsylvania Health System) merged to create Defendant Susquehanna Health System (hereinafter "SHS"). The result of the merger was a single entity with overwhelming market power in the markets for inpatient and outpatient hospital services.

Prior to the 1994 merger, two health systems were present in the Lycoming County/Northcentral, Pennsylvania area. They were Providence Health System, Inc., which included Divine Providence Hospital and Muncy Valley Hospital, and the North Central Pennsylvania Health System, which was comprised of only one hospital, the Williamsport Hospital and Medical Center. All three of these hospitals are located in Lycoming County. Two of them (Divine Providence Hospital and

William sport Hospital and Medical Center) are located in Williamsport, Pennsylvania and the third, Muncy Valley Hospital, is found approximately fifteen miles away in Muncy, Pennsylvania. Because of the merger, all of these hospitals are now part of SHS. The closest hospital that is not part of SHS is at least thirty miles away, and thus, too far away to be a reasonable alternative to patients living in the area.

The merger was allowed by the Attorney General of Pennsylvania in exchange for the merging parties' agreement to enter into a consent decree. The decree, required, *inter alia*, that the merged entity achieve certain savings from increased efficiency and pass those savings on to consumers in the form of lower prices in each of the five years following the merger. The five-year period expired in July 1999. Subsequent to July 1999, SHS has successfully demanded significant price increases from the plaintiffs for hospital services and indicated that they intend to extract similar increases from all other payors in the market as their contracts are negotiated for renewal.

The physician services and hospital services contracts that the plaintiffs previously had contained different renewal dates. Therefore, the plaintiffs did not anticipate renegotiating the contracts at the same time. However, at the time for renewal of the physician services contract, SHS terminated the contract for hospital services and informed the plaintiffs that they would be required to renegotiate the physician and hospital contracts jointly.

SHS was able to renegotiate its most recent contract with plaintiffs and obtain a 21 percent increase in hospital rates. The

---

**1.** By the term "plaintiffs' complaint," we are referring to the amended complaint filed by the plaintiffs on October 6, 2000.

resultant rates are much higher than the rates paid by the plaintiffs to hospitals in comparable communities with hospital competition. Further, the current contract with SPS requires Plaintiff HealthAmerica to pay higher rates for SPS physicians than it pays for comparable non-SPS physicians in the same community.

Accordingly, plaintiffs have filed a complaint alleging that the defendants engaged in an illegal hospital merger and a series of illegal physician practice acquisitions that have reduced competition and increased the prices that the local community must pay for health care services. Plaintiffs' complaint is comprised of three counts. The first count alleges an illegal hospital merger in violation of the Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 1 of the Sherman Act, 15 U.S.C. § 1. The second count involves allegations of illegal physician acquisitions in violation of the same statutory sections. Illegal restraint of trade in violation of the Section 1 of the Sherman Act, 15 U.S.C. § 1 is averred in the complaint's third count. Along with damages, the plaintiffs seek an injunction to force the defendants to price their services at competitive levels and prohibit them from tying the sale of hospital services to physician services.

Defendants have filed a motion to dismiss Count III of the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and argued, bringing the matter to its present posture. For the reasons that follow, the motion to dismiss will be denied.

**Standard of Review**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In de-

ciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. *Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997).

**Discussion**

In the instant case, the defendants claim that Count III of the plaintiff's complaint fails to state a cause of action upon which relief can be granted. Defendants present several different arguments to support their motion. First, they claim that the plaintiffs have not adequately alleged a "tying arrangement." Second, the defendants contend that even if a tying arrangement has been pled, relief on Count III is nonetheless improper because other allegations of the complaint are inconsistent with a tying scheme. Lastly, the defendants aver that the complaint fails to allege any damages due to the tying scheme. We shall address these issues seriatim.

*A. Is a tying arrangement alleged?*

 Defendants' first argument is that plaintiffs have not alleged a proper tying arrangement. A "tying arrangement" is where a seller agrees to sell one product (the tying product), but only on the condition that the buyer also purchase a different (or tied) product. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 461, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish Hospital District v. Hyde,* 466 U.S. 2, 12, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). A tying

arrangement violates section 1 of the Sherman Act where the seller has "appreciable economic power" in the tying product market and if a substantial volume of commerce in the tied market is affected by the arrangement. *Eastman Kodak*, 504 U.S. at 462, 112 S.Ct. 2072.

Count III of the plaintiffs' complaint reads as follows: "Susquehanna Health System refused to negotiate a hospital contract with the plaintiffs unless the plaintiffs agreed to renegotiate their contract for physician services with Susquehanna Physician Services. This conduct constitutes an illegal tying arrangement or other unreasonable restraint of trade in violation of Section 1 of the Sherman Act." Compl. ¶¶ 51–53.

Initially, the defendants claim that the plaintiffs merely assert that in order to negotiate a hospital contract with SHS, the plaintiffs also had to renegotiate their contract for physician services with SPS at the same time. Defendants contend that this scenario is not an antitrust violation but merely a request to conduct joint negotiations.

Plaintiffs do not refute defendants' contention that it is not an antitrust violation to request or conduct joint negotiations. Rather, they contend that the defendant's position is irrelevant to the case. Plaintiffs aver that the tying arrangement alleged in their complaint does not deal merely with negotiation of contracts but that the defendants refused to sign a contract to sell hospital services unless the plaintiffs agreed to sign a contract to purchase physician services from the defendants at the supra-competitive prices that the defendants demanded. Accordingly, in order to buy the "tying product" of hospital services, plaintiffs were forced to buy the "tied product" of physician services at

a supra-competitive price. A review of the complaint reveals that plaintiffs have in fact alleged such a tying arrangement, although it could have been written more clearly.

According to the plaintiffs' complaint: "[T]he defendants' refusal to contract for hospital services unless the plaintiffs renegotiated their contract for physician services constitutes an illegal tying arrangement ... in violation of Section 1 of the Sherman Act. . . . [this violation has] resulted in higher prices for hospital and physician services. These higher prices have harmed the plaintiffs and, if not stopped, will continue to harm the plaintiffs and will also harm employers, which pay a substantial amount of the cost of health care benefits for their employees." Compl. ¶¶ 28 and 30. We find that it can be inferred from this section of the complaint that the plaintiffs are alleging that in order to buy the "tying product" of hospital services, plaintiffs were forced to buy the "tied product" of physician services at a supra-competitive price.[2] Accordingly, we find that these allegations along with the allegations regarding SHS's power in the hospital services market (*See* Compl. ¶¶ 31–36) are sufficient to overcome the defendants' first argument.

B. *Are the plaintiffs' allegations of a tying arrangement invalid because the complaint alleges that it is SPS's market power that forces plaintiffs to purchase physician services from SPS?*

■ Additionally, the defendants claim that the Amended Complaint actually alleges that it is the "illegal physician acquisitions" and SPS's resultant market power, not a tying arrangement, that forces Plain-

---

**2.** The defendants apparently concede in their reply brief that plaintiffs' brief sufficiently

clarified their tying arrangement claim. (*See* Defendants Reply Brief, Doc. 18, at 2.)

tiff HealthAmerica to purchase physician services from SPS. Thus, defendants read the complaint as alleging that Plaintiff HealthAmerica would have purchased physician services from SPS regardless of its purchase of hospital services from SHS. Plaintiff HealthAmerica was forced to deal with SPS because of the number of SPS physicians in the alleged relevant market, not because of any tying arrangement. Accordingly, plaintiffs argue that the complaint contains two inconsistent causes of action. Count II of the complaint asserts that the plaintiffs have to deal with SPS and pay higher prices due to SPS's market power, and Count III contends that this result is due to the tying arrangement. Defendants find these two theories of recovery to be inconsistent with each other and assert that plaintiffs have pled themselves out of court on the tying arrangement claim by asserting the market power claim.

■ We find the defendants' argument to be wholly without merit. Even if we were to accept their argument that the complaint contains two inconsistent causes of action, such a situation is allowed under Rule 8 of the Federal Rules of Civil Procedure. Rule 8 allows for the pleading of alternative or inconsistent causes of action. *See* Fed.R.Civ.P. 8(e)(2). The Third Circuit Court of Appeals has acknowledged that this rule allows inconsistency in both legal and factual allegations. *Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority*, 103 F.3d 1165, 1175 (3d Cir.1997). Moreover, because of the rule, a court may not construe one of plaintiff's claims as an admission against another alternative or inconsistent claim. *Id.* Accordingly, the allegation that Counts II and III of the plaintiffs' complaint are inconsistent is not cause for dismissal of either count.

Moreover, the two causes of action are not necessarily in conflict with each other. If a seller engaged in a tying arrangement has a monopoly over the tied product, it merely enhances its ability to maximize its profits regarding the tying arrangement. Therefore, prices can potentially be higher. Ergo, the two theories of tying arrangement and market control are not necessarily mutually exclusive.

In *Eastman Kodak, supra,* the Supreme Court discussed a tying arrangement where it was alleged that Kodak tied the sale of service for its machines to sale of parts. It was also claimed that Kodak's control over the parts market "excluded service competition, boosted service prices, and forced unwilling consumption of Kodak service." *Eastman Kodak,* 504 U.S. at 465, 112 S.Ct. 2072. The Court allowed both the claim of a tying arrangement and the claim that Kodak exercised excessive amount of market power to proceed.

Likewise, in the instant case, it is alleged first that the SHS has tied the use of its hospital services to purchasing physician services. The plaintiffs further claim that SPS, (a wholly owned subsidiary of SHS) has a great amount of market power which forces higher prices. As opposed to being two separate and distinct theories, it can be argued that the tying arrangement has augmented the defendants' market power. Hence, they can require plaintiffs and others to buy physician services at prices that are higher then they would be in the absence of the tying arrangement. This situation is similar to the *Eastman Kodak* case and we find no inconsistency and no reason to dismiss either count.

Defendants cite several cases in support of their position, but we find them to be distinguishable. First, *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430 (3d Cir.1997) is cited. In this case, the plaintiffs alleged that Domino's Pizza had

used its power in the purported market for Domino's-approved dough to force the plaintiffs to buy unwanted ingredients and supplies from them. *Id.* at 443. However, the court concluded that Domino's was not forcing the plaintiffs to purchase the alleged tying product out of market control, but out of a contractual agreement they had made with the plaintiffs. Accordingly, no tying arrangement was found. *Id.* In the instant case, the plaintiffs do not have a contractual obligation with SHS to purchase physician services. It is alleged that they must purchase the physician services because of the market power the defendants possess. This element was lacking in *Queen City Pizza, supra.* Accordingly, that case is distinguishable and not controlling in the instant case.

Defendants also cite *Allen–Myland, Inc. v. International Business Machines Corp.*, 33 F.3d 194 (3d Cir.1994) in support of its claim. This case is inapplicable to the instant case. In *Allen–Myland*, the court first examined the facts to determine what the two relevant markets were, the tying product market and the tied product market. *Id.* at 200. In that case, the tying product market was large-scale main frame computers, and the court found that leasing of such computers and used parts upgrades were not part of this tying product market. *Id.* at 203–04. The *Allen–Myland* opinion, therefore, merely made a fact specific definition of the relevant market in a tying scheme. The opinion is little help to our decision in this instant case as the relevant markets are rather clearly defined as the hospital services market and the physician services market. Accordingly, nothing in *Allen–Myland* causes us to find for the defendants, and pursuant to Rule 8 and *Eastman Kodak*, the defendants' motion to dismiss on this ground will be denied.

### C. Did the plaintiffs allege antitrust damages?

Lastly, the defendants claim that the plaintiffs did not allege any injury caused by the tying arrangement and only seek damages based upon the higher prices that SHS/SPS were able to demand because of the market power created by the allegedly illegal mergers. We do not find the defendants' argument to be cogent. In order to bring a private antitrust action, a plaintiff must demonstrate "fact of damage," which is defined as some harm flowing from the antitrust violation. *Allen–Myland*, 33 F.3d at 201. As we have set forth above, the plaintiffs have sufficiently pled both a tying arrangement and claims of illegal mergers. The plaintiffs contend that both the tying arrangement and the illegal mergers caused damages. *See* Compl. ¶ 30. Accordingly, we cannot grant the defendants' motion to dismiss based on a failure to allege damages.

### Conclusion

In conclusion, we find that the plaintiffs have sufficiently pled a tying arrangement where in order to buy the "tying product" of hospital services, plaintiffs were forced to buy the "tied product" of physician services at a supra-competitive price. In addition, the tying claim is not inconsistent with and not precluded by the claims regarding the defendants' market power in the physician services market. Lastly, the plaintiffs have properly alleged damages with regard to the tying arrangement and the illegal merger claims. Accordingly, the defendants' motion to dismiss Count III of the plaintiffs' amended complaint will be denied. An appropriate order follows.

### ORDER

AND NOW, to wit, this 17th day of April 2001, the defendants' motion to dis-

miss count III of the amended complaint [14–1] is hereby **DENIED.**