NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2587

_____

JOCELYN ROUSE, an adult individual;
ROAC, INC., a Pennsylvania Corporation,

Appellants

v.

CITY OF PITTSBURGH;
MAURA KENNEDY, Director of the City of Pittsburgh's
Department of Permits, Licenses and Inspections

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. Action No. 2:16-cv-00608)
District Judge: Honorable Nora B. Fischer

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 15, 2018

Before: JORDAN, SHWARTZ, and KRAUSE, Circuit Judges

(Opinion filed: March 23, 2018)

_____

OPINION*

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

KRAUSE, Circuit Judge

Appellants ROAC, Inc. and Jocelyn Rouse, ROAC's Vice-President (collectively "ROAC"), appeal the District Court's grant of summary judgment in favor of the City of Pittsburgh and Maura Kennedy (collectively "the City"), contending they were arbitrarily debarred without process by the City in violation of both the Due Process Clause and the Equal Protection Clause. We perceive no error in the District Court's ruling and therefore will affirm.

I.     **Background**

ROAC is a minority-owned demolition contractor licensed by the City that, in November 2015, "caused damage" to the wrong building while carrying out a demolition contract. Appellants' Br. 3. Following the incident, ROAC completed other demolition contracts for the City that it had already been awarded, but over the next several months, despite submitting the lowest bid on several new projects, ROAC was not awarded any new contracts by the City. Throughout those months, ROAC contacted the City to ask why it was not winning any contracts, and while that inquiry did initiate a string of internal communications among City employees relating to ROAC's status as "not a responsible bidder," App. 180, none of those employees advised ROAC of that status or otherwise explained to ROAC why its bids were failing.

Understandably frustrated at the lack of response, ROAC filed a complaint in the Allegheny County Court of Common Pleas, alleging that the City had arbitrarily and unlawfully debarred ROAC, and that in doing so the City discriminated against ROAC. Four days after the complaint was filed, the City finally sent ROAC a letter explaining

that ROAC had not been debarred, but rather had been deemed a "non-responsible contractor." App. 98. The City subsequently removed to the District Court for the Western District of Pennsylvania, and the parties filed cross-motions for summary judgment; the District Court granted summary judgment in favor of the City.

This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment.[1] *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)), and we "view the record in the light most favorable to the non-moving party," *id.* We may affirm the District Court based on "any ground supported by the record." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam).

## III. Discussion

On appeal, ROAC contends that the District Court erred in concluding that: (1) ROAC was not arbitrarily debarred without the process to which it was entitled; and

---

[1] ROAC also purports to appeal the District Court's denial of ROAC's motion for partial summary judgment, but because a denial of summary judgment is not a "final decision[]," we lack jurisdiction to review it. *See Rivas v. City of Passaic*, 365 F.3d 181, 191 (3d Cir. 2004).

(2) ROAC failed to establish it was discriminated against based on race, or based on any other reason.[2]  We address these issues in turn.

## A.      Arbitrary Debarment and Due Process

The District Court concluded that ROAC lacked standing to bring a due process challenge because, under Pennsylvania law, "one who bids on a public contract has no legitimate expectation of receiving it until the contract is actually awarded," and therefore ROAC "ha[d] not been deprived of a property interest that warrants procedural due process protection." *Rouse v. City of Pittsburgh*, No. 16-608, 2017 WL 2672291, at *5 (W.D. Pa. June 21, 2017) (quoting *Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1178 (3d Cir. 1997)).  ROAC contends that, because the City deemed it a non-responsible bidder based on a "one-time determination that applied to all future City contracts," ROAC was constructively debarred and its standing is revived.  Appellants' Br. 19; *see Berlanti v. Bodman*, 780 F.2d 296, 300 (3d Cir. 1985) (concluding that New Jersey law creates "a property interest in not being arbitrarily debarred . . . [that] entitled [a contractor] to some procedural protection under the due process clause").  ROAC's claim fails, however, because it was not debarred, constructively or otherwise.

Under the Pittsburgh City Code, debarment prevents a contractor "from bidding on and participating in City contracts."  Pittsburgh City Code § 161.22(b).  Debarment

---

[2] ROAC also claims on appeal that the District Court erred in concluding that the due process claim was not ripe and that Maura Kennedy was entitled to qualified immunity.  Because we conclude ROAC was not debarred, we need not reach the ripeness issue.  And because we determine that ROAC failed to establish a genuine dispute of material fact with respect to the underlying constitutional issues, we need not reach the question of qualified immunity.

4

occurs for a "definitely stated period of time," *id.* § 161.22(d)(3), is imposed subject to a variety of procedural safeguards, *id.* § 161.22(e), and requires the "termination" of contracts entered into with a debarred entity, *id.* § 161.22(g). But ROAC, by its own admission, was not prevented from bidding on subsequent contracts, and it continued to work on City contracts even after it claims to have been debarred. Likewise, ROAC was not prevented from winning a contract for a fixed period of time; rather, as the City informed ROAC in its letter, ROAC could begin to win contracts once the City deemed it to have taken "affirmative steps . . . to prevent the kind of mistake it made last November." App. 100. And because ROAC was not in fact debarred, the contention that it was entitled to formal notice, investigation, or other process, is mistaken; these rights attach only to debarment. *See* Pittsburgh City Code § 161.22(e); *cf. Kierski v. Township of Robinson*, 810 A.2d 196, 199 (Pa. Commw. Ct. 2002) (holding that, when a township had knowledge based on "personal experience" of a bidder's inability to carry out the contract, the township was not required to conduct a formal investigation before determining whether the bidder was the lowest responsible bidder).

### B. Equal Protection

ROAC also asserts that the District Court erred in dismissing its equal protection claims under both a "selective enforcement" theory and a "class of one" theory. The selective enforcement theory appears to be that the City discriminated against ROAC based on race, and the class of one theory appears to be that the discrimination was based on City employees' personal dislike of Rouse.

5

To succeed under either theory, ROAC must demonstrate that it was treated differently from other similarly situated entities. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (selective enforcement); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (class of one). In an attempt to make this showing, ROAC points out that it was not sent any form warning letter even though the City allegedly always sends form warning letters to contractors "when it intends to withhold new contracts from those contractors." Appellants' Br. 27. It also argues that emails between City officials referring to the ROAC matter as "a very controversial issue," App. 191, and to Rouse as "[t]he lovely Jocelyn," App. 180, suggest that the City was intentionally treating ROAC differently from other contractors. In addition, ROAC notes that the City had initially alleged that ROAC employees had used obscene language toward a neighbor at a work site, but then withdrew the allegation after "an eyewitness to the events . . . stated that the neighbor at issue had used racially charged language against ROAC's crew." Appellants' Br. 29.

Based on the record before us, we agree with the District Court that a rational factfinder could not conclude that ROAC was treated differently from others similarly situated. As the City has noted, the form letters are "related to breach of existing awarded contracts," App. 259, not decisions about the award of future contracts. And while the City employees' emails may reflect their own frustration in responding to Rouse's persistent emails and phone calls, those emails do not support an inference of discriminatory treatment. Nor do the withdrawn allegations that ROAC employees used

6

obscene language suggest that the City treated ROAC differently from any other contractor.

**IV.    Conclusion**

For the foregoing reasons, we agree with the District Court that the City was entitled to summary judgment, and we therefore will affirm.